INDIANA SILO COMPANY *v.* HARRIS.

Opinion delivered May 6, 1918.

1.  SALES—SALE OF SILO—PROVISION AS TO CLAIM FOR DEFECTS.—The contract for the sale of a silo provided that all claims for shortage and damaged or defective parts must be made by the purchaser within ten days of the receipt of the silo. *Held,* such provision in the contract was not binding on the purchaser. There was no shortage or damaged parts which he discovered, or could have discovered by the exercise of ordinary care, within ten days after receipt of the silo.

2.  SALES—SILO—WARRANTY.—Where the contract covering the sale of a silo stated that the seller guaranteed the silo according to its current catalogue, and where by its catalogue the seller guaranteed long leaf yellow pine silos, properly roofed and painted, to last and give good for twenty years, *held,* the provisions amounted to an express warranty that the silo would preserve ensilage, and was fit for the purposes for which it was sold.

3.  SALES—SILO—IMPLIED WARRANTY.—In the absence of an express warranty the seller of a silo is liable upon an implied warranty that the silo will perform the services for which it was sold.

4.  TRIAL—SUBMISSION OF ISSUE—DUTY TO REQUEST.—Appellant can not complain that an issue was not submitted to the jury, where he made no request for an instruction upon that issue.

Appeal from Perry Circuit Court; *G. W. Hendricks,* Judge; affirmed.

*Joseph Loeb* and *Hutton, Davis, Nourse & Bell,* for appellant.

1. The court erred in giving defendant's instructions 3, 4 and 5 and in refusing those asked by plaintiff. The silo was not a finished product erected by plaintiff, and warranted fit for the purposes intended. The defendant took and accepted the materials and employed a contractor to erect it. If there were any defects plaintiff was not responsible. Defects, if any, were obvious and the defective parts should have been rejected and notice given. A general warranty does not cover obvious defects. If the silo had been properly constructed according to directions, it would have given satisfaction. This was an express warranty and excludes an implied warranty as

to fitness. 126 Fed. 487; 9 C. J. 754, 804; 75 Ark. 206-8; 23 *Id.* 730-4; 173 Ill App. 21, 35; 96 Atl. 535-9; 70 Ark. 503; 35 Cyc. 392; 114 Wis. 419; 177 S. W. 735; 90 S. E. 526; 56 Mo. App. 427-433; 75 Ga. 470; 155 Ind. 536; 90 Wis. 590; 181 S. W. 273-7.

2. Instruction 5 ignored the terms of the written contract and was error. Testimony as to what plaintiff's agent said was not admissible as the entire contract was in writing. 75 Ark. 206-210; 76 *Id.* 74, 79; 74 *Id.* 148; 95 *Id.* 492.

*J. H. Bowen* and *Sellers & Sellers,* for appellee.

1. All the instructions are not included in the transcript, nor set out in the abstract. 102 Ark. 96; 28 *Id.* 549; 35 *Id.* 224; 46 Id. 209.

2. No exceptions were properly saved to the instructions given by the court. 101 Ark. 95. The fault in the construction of the silo, if any, was not presented to the jury, as no request for such instruction was made by appellant.

3. The express warranty does not exclude an implied warranty of fitness for the purpose intended. 7 H. & N. 955; 99 N. W. 183; 44 *Id.* 548; 100 Ark. 21. There was an express warranty of fitness for a complete silo.

4. There was no error in No. 5. The ten day clause could not apply, as the defects were not obvious, nor ascertained in that time. 95 Ark. 488.

5. The instructions asked by plaintiff were properly refused. 181 S. W. 275. But all the instructions given and refused are not set out in the abstract.

### STATEMENT OF FACTS.

The appellant brought this action against the appellee to recover a balance of $237.58 due on a promissory note executed for the purchase price of a wood stave silo which was bought of the appellant under the following contract:

"Indiana Silo Company,
    Kansas City, Missouri.

Date, March 12, 1914.

"Please ship me on or before May 1, 1914, or at your earliest convenience to town of Bigelow, County of Perry, State of Arkansas, the following described silo at prices f. o. b. Kansas City, Mo., this order being subject to approval of the Indiana Silo Company at Kansas City, Mo., 20c freight allowed.

| Outside Diameter | Height | Kind of Wood | Price |
|---|---|---|---|
| 1-14 | 30 | 2pc. Yellow Pine | $250.00 |
| | | Less 5% discount | 12.50 |

$237.50

"On receipt of the above I will pay to the Silo Company, or its order, $237.50, payable at Morrilton, Bank of Morrilton, Ark., as follows, towit:

"Payable on or before December 1, 1914, with privilege of longer time if wanted with 8% from September 1, 1914.

"It is understood that the silo above ordered is guaranteed according to current catalogue, and all staves are to be tongued and grooved. All silos furnished with continuous door frame and doors, rafters, wood rim and anchors. All claims for shortage, damaged or defective parts must be made by purchaser within ten days from time of receiving silo. In the event shortage exists or parts are to be replaced purchaser shall render all friendly and necessary assistance free of charge and shall return broken or defective parts to railroad station and shall consign them to the Indiana Silo Company and furnish said company with a bill of lading as evidence of his claim. The Indiana Silo Company agrees to pay all freight charges in making exchange or replacing shortage. All settlements to be made at time of delivery of silo, either in cash or bankable notes bearing current rates of interest. It is expressly agreed that the silo above ordered shall be and remain the exclusive property of said Indiana Silo Company, and that the title thereto shall not

vest in the purchaser until the purchase price thereof or any note or security given therefor shall have been paid in full in cash, and the acceptance of notes or other security shall not act as a waiver of this condition. This order embodies all and is the only agreement between the parties hereto.

"Sign here, N. C. Harris,
P. O., Bigelow, Ark., R. F. D.
"Witness: F. H. Lillick, Agent."

The plaintiff alleged that it sold and delivered the silo under the above contract, which it set up and which was also introduced in evidence. It also set out the notes alleging that no part thereof had been paid except what was credited thereon and alleged that it had a lien on the silo, and prayed for judgment for the balance due and for an order directing attachment of the property, described in the complaint.

The appellee answered, admitting the execution of the notes and the contract set forth in the complaint which he alleged constituted one transaction. He set up as a part of the same transaction and as part consideration of the purchase of the silo that he was made agent of the plaintiff for the sale of silos and was to be allowed a certain commission; that he had earned under his agency contract enough commissions together with the check he had sent to plaintiff to pay off the notes except the sum of $71.03. He alleged that the silo purchased by him of plaintiff was "of rotten material, same being knotty, and when filled with ensilage permitted the ensilage to freeze and spoil. He alleged that the silo was purchased according to current catalogue, copy of which was furnished the defendant, with the guarantee and description of the silo marked by the agent; that when the silo was put up and filled with ensilage it was found to be worthless and unfit for the purpose for which it was purchased; that he had put up the silo as directed by the plaintiff and in a proper manner; that the defendant by reason of the failure of the plaintiff to furnish a silo as represented and according to the contract, had lost about twenty tons of

ensilage of the value of $300 and also the value of the material and the work which the defendant had furnished in the sum of $50, and damages which the defendant had sustained by reason of the attachment in the sum of $50. The defendant prayed by way of cross-complaint that he be allowed to recover the sum of $338.97, being the amount of his damages less the balance due upon the notes as mentioned, and for costs.

The plaintiff answered the cross-complaint, denying its allegations, and alleging that defendant had never notified plaintiff of any defect in the material of which the silo was constructed until after the commencement of the suit. Plaintiff, therefore, pleaded such failure to notify as a waiver. Plaintiff also alleged that the defendant had an opportunity of inspecting the material of which the silo was constructed several months after its delivery and to ascertain whatever defects there were, if any, in such material. It pleaded that the defendant was estopped by his conduct from claiming damages on account of such defect, if any. Plaintiff alleged that if any damages resulted from the loss of ensilage it was the direct result of improper and negligent construction of the silo and the careless methods of defendant in attempting to preserve the ensilage. Plaintiff, therefore, prayed that the cross-complaint be dismissed.

The undisputed testimony shows that the defendant purchased of the plaintiff, through one of its agents, a silo under the contract set forth in the complaint and executed his notes therefor as the complaint alleged. At the time of the purchase the agent of the plaintiff showed the defendant "the current catalogue" referred to in the complaint and read to him certain paragraphs, among which was the following: "We guarantee our long leaf yellow pine silos when properly roofed and painted to last and give good satisfaction for a period of twenty years." The silo purchased was to be of long leaf yellow pine.

Testimony on behalf of the appellee tended to prove that the material of which the silo was constructed was

staves of long leaf yellow pine and bands, which was shipped by appellant to appellee in a knocked-down condition. Appellant furnished appellee with plans for building the same and appellee constructed the silo according to these plans. The material was received by appellee in May and the silo was erected about the last of the following July. Appellee, a month or so afterwards, filled the silo with ensilage, placed therein about eighty tons. The agent of appellant saw the silo before he put it up and instructed the appellee to go ahead and put it up, that the material was all right. This was appellee's first experience with silos, he had no occasion to know anything about what it took for staves to make a silo. He was no judge of the material, and from the looks of it could not tell whether defective or not, but it turned out that it was. He put up the silo according to the advice of the agent of the plaintiff relying on his judgment that the staves were suitable. Appellee had noticed that some of the staves were not hard lumber and had called plaintiff's agent's attention to that fact, and he said that the silo was all right and to put it up. He stated to go ahead and use it, and that the plaintiff would pay the damages if there were any loss. Appellee did not notify the plaintiff of any defects in the silo until after the commencement of the suit, except to call the agent's attention to it. Appellee discovered when he began to take the ensilage off the top that it was spoiled all the way down from the top to the bottom. The bottom of the silo was all rotten. The lower ends of the staves were rotten five or six inches up. In laying the foundation the appellee followed the instructions of appellant's agent and the plat and form appellant furnished him.

A witness who assisted appellee in putting up the silo corroborated the testimony of the appellee. He stated that the silo was erected by an experienced contractor and carpenter. The material of which it was constructed rotted and moulded and permitted the ensilage to seep between and through the sides. The silo was properly roofed and painted.

There was testimony on behalf of the appellant tending to prove that the defective condition of the silo was caused by failure on the part of the appellee to build the same according to the instructions that were furnished him. These instructions called for a cement rim to be run up at least six inches on the inside of the base of the staves. The purpose of the cement rim on the inside was to prevent the air from coming in under the base of the staves and holding the base of the silo firmly on its foundation. The cement base was built contrary to the instructions. The rim of concrete was put on the outside and built up against the staves. The effect of it was to catch the water as it rained and hold it and rotted the bottom end of the staves. The defective condition of the staves was caused entirely by a failure to properly build the concrete rim at the bottom of silo. This failure caused cracks at the bottom and produced the decayed condition of the silo.

The court, among others, at the request of the appellee granted the following prayers:

"3. If the plaintiff warrants the silo to be reasonably fit for the purposes for which it was sold to the defendant, and if you find that said silo was not of quality warranted and was not fit for such use, defendant has the right to recover on his counter-claim all such damages as you find from the proof he has sustained by reason of such unfitness."

"4. If you find that the plaintiff was engaged in making silos and selling silos to purchasers for their own use and made and sold the silo to the defendant for his use, it as matter of law warranted that it was reasonably fit for the use for which it was intended."

"5. The provision in the contract by which defendant was to notify plaintiff of defective parts in ten days of their arrival do not bind the defendant in this case. The ten days mentioned in this contract will not apply in this case, because the damages for which he sues was a resulting damage for a defect that had resulted after the ten days had expired."

The jury returned the following verdict: "We, the jury, find for the plaintiff in the sum of $237.58 and find for the defendant on his counter-claim in the sum of $368." The court rendered judgment in favor of the appellee in the sum of $130.42, the difference between the two sums above. From that judgment is this appeal.

WOOD, J., (after stating the facts). (1) The contract provides that "all claims for shortage, damaged or defective parts must be made by purchaser within ten days from time of receiving silo." The court did not err in instructing the jury that this provision of the contract was not binding upon the appellee because under the undisputed evidence there was no shortage, no damage, or defective parts which the appellee discovered, or by the exercise of any ordinary care could have discovered within ten days after the silo was received.

Appellee testified concerning this that he was inexperienced in the building of silos and was no judge of the material of which they were constructed, and from the looks of the material he could not tell whether it was defective or not. Furthermore, that the agent, through whom the appellee purchased the silo saw the material before it was put up and instructed appellee to go ahead and put it up; and that he relied upon the agent's judgment.

The testimony on behalf of the appellant was to the effect that there was no shortage, and that the material of which the silo was constructed was entirely free from damage or defective parts. There was no testimony to show that the defects were obvious to one of appellee's experience.

The court was fully justified in not allowing any issue to go to the jury as to whether or not the appellee was estopped from claiming damages by a failure to comply with the ten-day clause of the contract.

(2) The provisions in the contract, "that the silo above ordered is guaranteed according to the current catalogue," and the provisions in the current catalogue, "we guarantee our long leaf yellow pine silos when prop-

erly roofed and painted to last and give good satisfaction for a period of twenty years,'' constitute an express warranty that the silo would preserve the ensilage and was fit for the purposes for which it was manufactured and sold.

(3) Appellee's prayer No. 3 would have been a correct instruction if based on the provisions of expressed warranty, and if the case had been presented to the jury on that theory as it should have been. Even if there had been no express warranty the appellant was liable upon an implied warranty and the court did not err in submitting that issue to the jury as it did in appellee's prayer No. 4.

Appellant made no specific objection to this prayer and did not itself offer any prayer for instruction submitting the issue as to whether or not the damage of appellee arose from a defective construction caused by him and not from any shortage or defect in material of which the silo was constructed.

The testimony on behalf of the appellee tended to prove that the silo was constructed precisely in the manner directed by the appellant. Appellee, therefore, had the right to insist that the silo when so constructed would be useful for the purpose for which it was intended. There is no conflict between the expressed and implied warranty from appellee's viewpoint of the evidence and he had a right to have the issue presented from his viewpoint. See *Blackmore* v. *Fairbanks, Morse & Co.,* 44 N. W. 548.

(4) The appellant is not in an attitude to complain that its theory that the damages, if any, to appellee resulted from his own failure to construct the silo properly rather than from any defective material, was not made an issue before the jury for the reason that appellant presented no such request. Appellant made no complaint as to the amount of the damages.

The judgment is therefore, correct and is in all things affirmed.