PEARSALL AND COMPANY v. L. C. EAKINS.

(Filed 1 November, 1922.)

1. **Constitutional Law—Statutes—Police Powers—Fertilizers—Analysis—Agricultural Department—Evidence.**

Statutes requiring evidence of the analysis of fertilizer, made by a State department, showing a deficiency in the ingredients used therein and different from those represented in the warranty of sale, in order to recover for damages to crops caused by their use, are constitutional and valid within the exercise of the police powers of the State. C. S., 4697, and recent amendments thereto.

**2. Statutes—Fertilizer—Analysis—Agricultural Department—Evidence—Actions—Counterclaims.**

In order to recover damages to the crops caused by the use of fertilizer containing a harmful deficiency of its ingredients, contrary to the seller's warranty, the statute, C. S., 4698, with its recent amendments, requires evidence of its analysis, showing the alleged deficiency, made by the State Agricultural Department, and whether sold upon a special contract, not waiving the benefit of the statute, or under the protection of the statute alone, such evidence is essential to defendant's recovery upon a counterclaim set up by him in plaintiff's action upon the note for the purchase price.

APPEAL by defendant from *Bond, J.,* at February Term, 1922, of NEW HANOVER.

This was an action brought by the plaintiff for the recovery of a certain sum of money due by contract, and secured by a crop lien, executed by the defendant to the plaintiff, for the purchase of certain fertilizers.

The defendant admitted the purchase of the fertilizers and the execution of the contract, and that same had not been satisfied, but defendant set up a counterclaim for damages to his crops, alleging that the fertilizer did not come up to the guaranteed analysis, and that it had borax in it, and that borax was deleterious to crops, and by the use of the fertilizer containing this borax his crops were damaged in a certain amount.

The plaintiffs replied, pleading noncompliance with C. S., 4697, as a necessary prerequisite to asserting the counterclaim against plaintiffs.

The plaintiffs offered in evidence the admissions of the defendant, as stated in the defendant's brief, and in addition to that, offered in evidence the fourth paragraph of the answer, which states "that no part of the indebtedness on the note had been paid." So there was no substantial dispute between the parties, as to the liability of the defendant to plaintiff, and the amount thereof, unless defendant was entitled to recover on his counterclaim.

In his effort to prove the counterclaim, defendant went on the stand and told about the crop that he contemplated planting, offering to testify as to some conversation he had with Mr. Pearsall, a member of the plaintiff's firm. This was objected to by plaintiff, and ruled out by the court on the ground that the defendant was not suing in his counterclaim upon a special contract, but only on the contract implied by law, which was based upon the analysis printed upon the bags, as required by the statute. Defendant thereupon admitted that he had no evidence to show that any samples had ever been drawn, in accordance with the statute (C. S., 4697), and that he had no evidence that the chemist of the Department of Agriculture had ever analyzed any samples drawn,

as required by law, which showed borax or other deleterious ingredients. In fact, he admitted that the requirements of C. S., 4697, had not been complied with at all, although "the action was a suit for damages from results of use of fertilizers." Thereupon, counsel for plaintiff moved to nonsuit defendant upon his counterclaim, which was granted, and moved for judgment on the note, or contract, which was not resisted, and was also granted. Defendant appealed.

*Rountree & Carr* for plaintiff.
*Herbert McClammy, E. Croswell Robinson, and K. O. Burgwin* for defendant.

WALKER, J. The only question, as it seems to us, except as stated, which is presented to the Court for decision in this case is whether the cross-action on the counterclaim can be brought when it is admitted that the provisions of C. S., 4697, were in no respect complied with. We understand the defendant to virtually admit that to be the only question, and he insists that under the case of *Tomlinson v. Morgan,* 166 N. C., 557, such an action is maintainable.

We deem it sufficient to say that since that case was decided, the Legislature has changed the statute, and for the express purpose of requiring the Department of Agriculture, its officers and agents, as directed thereby, to furnish the testimony, or at least an important and essential part of it, upon which actions for injuries to crops by the use of fertilizers can be brought and successfully maintained, and failing in this respect, that no such action can be sustained. This was for the purpose of placing the responsibility for ascertaining the truth as to the contents of the fertilizer in the hands of the highest authority in the State—the Agricultural Department, which acts under expert guidance.

This statute is the last declaration of the legislative body as to the requirements necessary before a suit may be maintained for damages due to defective or deficient fertilizers, and, for the purpose of showing this, it would be more accurate to quote from the statute as follows: "*Provided,* that no suit for damages from results of use of fertilizer may be brought except after chemical analysis showing deficiency of ingredients, unless it shall appear to the Department of Agriculture that the manufacturer of said fertilizer in question has, in the manufacture of other goods offered in this State during such season, employed such ingredients as are outlawed by the provisions of this article, or unless it shall appear to the department of agriculture that the manufacturer of such fertilizer has offered for sale during that season any kind of dishonest or fraudulent goods."

We think no one will dispute the power of the Legislature to enact this statute, in the exercise of its police power, or to say under what conditions the courts of the State may be used for the purpose of litigation. The wording is plain and the requirements have not been complied with. No samples were taken of these fertilizers, as required by law, and no analysis by the chemist of the Department of Agriculture was ever made, and no attempt was made to prove, nor any offer to show that it was brought to the knowledge of the Department of Agriculture that the manufacturer of said fertilizer has offered, during the season, other outlawed or dishonest or fraudulent goods.

Plaintiffs rely upon the recent case of *Fertilizer Co. v. Thomas,* 181 N. C., 274, and defendant's counsel attempt to distinguish that case upon the grounds that there was a special contract, and that there was an analysis which showed that the fertilizer did not contain borax. As we read the *Thomas case, supra,* the decision is put squarely upon the terms of the statute, C. S., 4697, although the decision could also have been sustained upon the terms of the special contract, if that was not impliedly done. In fact, it has been held by this Court that, in the absence of a special contract, the parties must look for their rights in such cases to the terms of said statute. *Fertilizer Works v. Aiken,* 175 N. C., 398.

Defendant has directed our attention to the case of *Patterson v. Orangeburg Fertilizer Company,* 108 S. E. (S. C.), 401. It is sufficient to say that apparently there was no such statute in South Carolina as the one relied upon herein, and the decision of that case, as we understand it, was based upon principles of the common law, and really has no proper application to this one, which must necessarily be determined by a consideration and construction of our statute bearing upon the subject involved. That case, though, seems to accord generally with our former decisions upon the liability of the seller of fertilizers for deficiency therein which causes loss or injury to crops resulting from their use. *Carter v. McGill,* 168 N. C., 507 (*S. c.,* 171 N. C., 775). See, also, *Guano Co. v. Livestock Co.,* 168 N. C., 442.

The present case may well be decided upon the admissions of the defendant and the uncontested facts. Defendant has not complied with the provisions of the statute, which expressly forbids "any suit for damages resulting from the use of a fertilizer except after chemical analysis showing deficiency of ingredients, unless," etc., and defendant has not brought his case within the terms of this last or qualifying clause or proviso by proving, or offering to prove, the facts therein required to appear, in order to take his case out of the terms of the first clause or proviso. If there was a deficiency, in that borax was substituted for potash, the former being a deleterious substance and injurious to crops, the defendant should have proved first the analysis

showing the deficiency, under the clear terms of the statute, because it is provided thereby that no suit for damages resulting from the use of the fertilizer may be brought until the analysis is made, and shows the deficiency of ingredients.

The evidence sought to be introduced was properly rejected, and was so manifestly incompetent and irrelevant, under the pleadings and pertinent issues, as to require no discussion of it.

No error.