Gaston, Judge.
 

 However clearly it is settled with us, fhat a judgment of nonsuit, when submitted to in deference to the opinion of the Court, may be reversed on aPPea^ as erroneous, it has not been, and, we think, ought not to be held, that the refusal of the Court to nonsuit a plaintiff can be assigned for error. The Court is never k°urffi to order a nonsuit; if for no other reason, because it cannot nonsuit a plaintiff against his will; and wherever the propriety of a motion for a nonsuit is at all questionable, the court ought to decline giving such a direction, anc^ permit the cause to go on to a verdict. By exceptions duly taken, if the ground of nonsuit lie in the proofs, or by motion in arrest of judgment if it appear of record, the matter can be put, or is already put in the way for deliberate and final adjudication. In this case, therefore, we shall not examine, whether the motion, for a nonsuit was well founded or not. It may be, that the judge’s opinion having been manifested, or supposed to have been manifested by the refusal of this motion, the defendant’s, counsel prayed for no instruction to the.jury, in relation to the matters whereon he had made that motion. However that may be, the record states but one instruction prayed for, viz. whether sufficient time' had elapsed between the promise and the breach declared on, to warrant the plaintiff’s action ? — and in the instruction given upon that prayer, we see no error.
 

 But it is insisted for the defendant, that the judgment rendered below, must be reversed, because the plaintiff is
 
 *305
 
 not entitled to any judgment by reason of the insufficiency of his declaration. This objection is open to the defendant upon the record. The declaration contains two counts. r 4 . The verdict is a general one, and so is the judgment; if therefore either of the counts be bad, the judgment is erronéous. The first count sets forth, that the defendant’s intestate had sold to the plaintiff a certain slave as a sound slave, which was unsound and o,f no value; and that such unsoundness afterwards came to. the knowledge of the plaintiff; and that thereupon in consideration of the premises, and that the plaintiff would return the slave to the intestate, he, the intestate, undertook and promised the plaintiff to cure, or cause to be cured, the said slave, or to. pay back the price he had received; and avers that the slave was accordingly returned; that the slave has not been cured, but remains in the possession of the defendant, unsound and of no value; and that the price hath not been refunded notwithstanding demand was made therefor. The second count differs, from the first only in laying the promise subsequently to the return of the slave, and setting forth as the consideration of the promise, the sale and discovery of unsoundness as aforesaid, and the return of the slave at the special instance and request of the. defendant.
 

 The point mainly relied on, in the argument by the plaintiff’s counsel, was, that the intestate was under a moral obligation to reimburse the plaintiff, and this obligation constituted a sufficient consideration to make the intestate’s promise binding in law. It was not contended, that he was under a legal obligation to make reimbursement; for the sale having been without warranty and without fraud, the vendee was bound in law to bear the losses arising from defects in the thing sold.
 
 Erwin
 
 v.
 
 Maxwell,
 
 3 Murp. 241, But it was insisted, that no man could keep with a safe conscience, the price of an article, sold as valuable and afterwards found to be worthless,;- and that although the law, while the obligation to make, restitution rests only in conscience, cannot interpose to, compel performance of the duty, yet it will gladly seize on, a promise to perform it, and uphold it as binding. It is,
 
 *306
 
 always gratifying in the administration of the law to behold it enforcing its precepts of natural justice ; but it cann0* successfully undertake to compel the performance of
 
 all
 
 of them, even on those who have expressly assumed to perform them. There are many duties to our fellowmen an enlightened conscience recognizes, that are ’
 
 °
 
 . either too refined to be discerned, too indefinite to be pre-scr'bed, or too imperfect to be enforced by human institutions, or which are regulated by a standard of morals too h'gb to be applied as an ordinary instrument for measur-jng legal obligations. Those duties which are plain, definite and positive, and which can be practically enforced in the business of life, are recognized as legal obligations, and an undertaking to perform them, is raised through the fiction of an implied promise. There is however a class of cases, where, although the moral obligation may be plain and perfect, and ordinarily a proper subject for legal enforcement, yet its performance cannot be compelled, because of some rule of public policy, and where therefore the law will not imply a promise. If, however, in these cases a promise be afterwards made, when the interdict shall have been removed, so that allowing legal validity to the promise, will not conflict with-the rule, there is no longer a difficulty in enforcing it. Thus it is , , °
 
 J
 
 , , a clear moral obligation to return money which has been borrowed ; and in general the law compels the perform-, anee of the duty. 'c From principles of public policy, however, it will not enforce such - an obligation against a' feme covert or an infant, because it denies to the one the legal capacity to contract, and allows it to the other only t0 a very limited exient- if after the feme covert becomes a widow and the infant attains full age, they distinctly and unequivocally promise to pay what they would have been bound to pay, but for the protecting and dis-, abling rule of law, the promise is regarded as binding as it would have been, had there been no such rule. In these cases, the express promise gives an original cause of action, although there never was an antecedent legal obligation ; not merely because there was a former moral obligation, but because there was a former moral obliga
 
 *307
 
 tion, which would have had legal efficacy, but for tempo-. rary causes removed before the new promise was made. So if a certificated bankrupt or one set at liberty after being taken by a
 
 ca. sa.,
 
 promise to.pay his former creditor, ora debtor promise to pay a debt, the recovery of which is barred by the statute of limitations; the law will compel the performance of the promise, founded on the former obligation, because it was once a complete legal obligation, and it is distinctly and unequivocally re-assumed, when there is no rule of legal policy to forbid it. But it is believed that a promise, however express, must be regarded as a
 
 nude pact,
 
 and not binding in law, if founded solely on considerations, which the law holds altogether insufficient to
 
 create
 
 a legal obligation; and from which,
 
 °.
 
 . therefore, it refuses to raise the
 
 inference
 
 oí a promise against any person. (See note to 3 Bos. & Pul. page 249, and the cases there collected.) The result of all the cases as summed up in the note referred to, is, “ an express promise can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law, but can give no original right of action, if the obligation on which it is founded, never could have been enforced at law, though not barred by any legal maxim or statute provision.” This summary expresses the rule, we think, with as much precision as can be expected on a subject, where there is an excess of nice learning, and upon which there have been many decisions which it is difficult to reconcile with each other. It has been adopted, we see, with approbation in the Supreme Court of New York, in a case analogous to the present — ■ that of
 
 Smith
 
 v.
 
 Ware, 13
 
 Johns. 257.
 

 
 *306
 
 It is not every m°-ral obligation that is inhw to raise an promise, or to support one?Xpr°SS
 

 Such only Sle°conl"i-de™tions, would orí-ginally have been-good, but rule of16 policy, as a pay™ debt barred by of limita-thehian<^
 

 
 *307
 
 Butamoral ^1^1011 never could enforced, is"ot.a sufficient considera-t°nsup" express promlse‘
 

 If we dismiss, as not constituting a sufficient consideration for the promise of the intestate, the supposed moral .obligation incumbent on him to remunerate the plaintiff for his unexpected loss, we can see in neither count of the declaration, any other matters averred constituting such a consideration. This is not an action to recover damages for an injury done -to the plaintiff's property. It is not an action on mutual promises, but simply to recover a sum
 
 *308
 

 0f
 
 money promised to be'paid under certain circumstances? that is, if a cure was not effected. Now, in
 
 siich
 
 ail action, it ■ is certainly the general principle, and we are not aware of any exception embracing the case before us, that the consideration necessary to support the promise, must be some act or omission beneficial to the defendant (or accruing to a third person at the defendant’s request) or prejudicial to the plaintiff.
 
 Johnson
 
 v.
 
 Johnson,
 
 3 Hawks, 556.
 

 No benefit has resulted to the defendant’s intestate from being permitted by the plaintiff to incur the expense and trouble of endeavouring to cure the plaintiff’s slave. No inconvenience or prejudice has been occasioned to the plaintiff. The slave has not been injured — it is averred only that he has not been cured. No loss of service is charged or can be presumed, for the declaration avers that the slave was worthless when the plaintiff put the slave into the hands of the defendant’s intestate to be cured, and continues worthless.
 

 Whatever, therefore, might be the character, in
 
 foro conscientice,
 
 of the intestate’s promise, in law it was without consideration and void. It is the opinion of this Court, that the judgment rendered below must be reversed, with costs to the appellant in this Court -; and that judgment on ■the verdict must be arrested.
 

 -Per Curiam. Judgment reversed.