HALL FURNITURE COMPANY v. CRANE MANUFACTURING COMPANY.

(Filed 28 April, 1915.)

**1. Vendor and Purchaser—Contracts—Warranty Implied—Merchantable.**

The law will imply a warranty in the sale of goods that they are at least merchantable or capable of some use for the intended purpose; and where, in the sale of a second-hand hearse, neither of the parties having seen it, the seller expressly states that he will not warrant its "condition," owing to the difference in opinion of the value of such things, but that it will be shipped to the buyer ready for use, etc., it will not affect the implied warranty that the hearse can at least be used as such and that it is not worthless, for the provisions stated by the seller only relate to a warranty of the quality of the article sold, which the law itself excludes in the absence of contractual provision therefor.

**2. Same — Entire Contract — Correspondence — Warranty of Quality — Merchantable—Interpretation.**

> In correspondence leading up to and included in a contract of sale of a hearse, the purchaser wrote the seller that he was in need of a good second-hand hearse, to which the seller replied that he had one at a certain place which he would ship on receiving remittance therefor in a certain sum, and upon receiving the remittance, he held the check and wrote the purchaser that, to avoid misunderstanding, he desired to say he would not guarantee any second-hand vehicles, etc. Upon its arrival the purchaser found it to be worthless. Neither of the parties had seen the hearse up to that time. *Held,* the purchaser may recover upon the implied warranty that the hearse could at least be used as such, but not as to the quality; and the entire contract is not inconsistent with this construction, or as striking out the express provision that vehicles of this kind were not guaranteed by the seller.

APPEAL by defendant from *Devin, J.,* at November Term, 1914, of Guilford.

Action to recover $100 which the plaintiff paid to the defendant as the purchase price of a second-hand hearse which was shipped to the plaintiff after the payment of the money and before he had seen the hearse.

The plaintiff refused to accept the hearse because, as he alleged, it was worthless. The contract of sale was entered into by correspondence.

On 27 February, 1913, plaintiff wrote the defendant: "We are in the market for a good second-hand funeral car—light weight preferred." On 1 March, 1913, defendant answered, saying: "We are glad to hear . . . that you are in the market for a good light-weight, second-hand black funeral car. Accordingly, we inclose herewith the following designs: . . . R. J., 710, is a light-weight, second-hand four-column black car which we have stored with one of our customers in Tennessee. It has steel tires on it and the general condition of it is pretty good. . . . Simply inclose your check for which ever one you want." This letter inclosed a cut of R. J., 710.

On 5 March, 1913, plaintiff wrote: "If the 710 you speak of in Fayetteville, Tenn., is in good condition, and like the cut you sent us, and will take any size casket—all complete—we will send you check for $100 for the same."

On 7 March defendant wrote plaintiff: "Of course, you understand we do not guarantee any second-hand vehicles, but from what our representative writes regarding this, we are inclined to think that it is worth every dollar we ask for it. (Price asked was $150.) Your offer now of $100 is considerably less than what we expected to realize out of it, but as we have quite a stock of second-hand cars on hand at the present time, and do not want to bring this one in also, we have decided to accept your offer of $100 cash, and will appreciate your check for that amount at once."

On 10 March plaintiff sent defendant check for $100, and in his letter stated that he was buying R. J., 710, with the understanding "that it is like the cut sent me and in good condition."

On 12 March the defendant wrote the following letter to the plaintiff:

"We are in receipt of yours of the 10th inst., inclosing check for $100 in payment of the R. J., 710, funeral car, which we have stored at Fayetteville, Tenn.

"We note your shipping instructions to forward to the Hall Furniture Company at Leaksville, N. C., via the cheapest route. Before ordering this car shipped to you, however, we would want it thoroughly understood that we do not guarantee condition of any second-hand vehicles. As stated in our last letter, we have not seen the vehicle ourselves, but our representative, who did see it and made the transaction, advises us that, in his opinion, he considered it worth every dollar which we are asking for it. A car that has been out some years evidently does show wear and tear, and if there should be any doubt in your mind as to the value of it, it would pay you to go to Fayetteville, Tenn., to look at this car, in order that there may be no misunderstanding with us regarding its condition. What may be considered by us as being good condition may not agree with your idea of good condition, as there is a great deal of room for difference of opinion as to the value of second-hand hearses.

"We wrote you yesterday that we were informed by our customer that this hearse had a brake on it and steel tires, and we understand that it will be shipped to the buyer with lamps, curtains, pole, and everything ready for use.

"If you, therefore, decide to take it with the distinct understanding that it cannot be returned to us if not satisfactory, and that it is not guaranteed by us as to condition, we will instruct our customer to forward it over the cheapest route, sending bill of lading with freight rate inserted for same to us, which we will, in return, forward to you, together with receipted bill for the amount.

"It is not our intention to deceive any purchaser of goods from us, and, therefore, think it best to write you of the actual conditions, so that if you desire to look into it personally you could do so before making shipment of the vehicle to you.

"We will hold your check until we hear from you as to your decision in the matter."

The plaintiff offered evidence tending to prove that the hearse was of no value and worthless; that there were no wheels on the hearse and that those sent with it were not of sufficient strength to hold it up, because some of the spokes were out and a part of the felloes loose, and that the top was weather-worn and rotten so you could tear it off with the hand, and a part of the woodwork was decayed and in bad shape.

The defendant offered no evidence as to condition of the hearse.

His Honor charged the jury, among other things, as follows:

"The warranty upon which the plaintiff would be entitled to recover, if any, would be inherent to, or, as we say in law, implied by law in the transaction, the implied warranty of identity; that it was the same thing contracted for and that it was fit for the purpose for which it was intended; not that it was good quality, or first quality, or second quality, but that it was the thing contracted for—a hearse—and that it was fit for use for the purpose for which it was intended. So that, upon this issue, after considering all the evidence, if you find from this evidence and by its greater weight that the hearse received by the plaintiff was not the one that was ordered, or that the car received was worthless and unfit for the purpose for which it was purchased—incapable of being used as a hearse; if you find these to be the facts by the greater weight of the evidence, it will be your duty to answer this issue '$100.'

"But, if you find that this car was the one that the plaintiff ordered, and that the condition was not such as stipulated by the plaintiff in his original letter or the cut, yet if it was fit for use for the purpose intended—that is, fit for use as a hearse—if you find these to be the facts, it will be your duty to answer this issue 'Nothing.'

"The burden is upon the plaintiff to satisfy you that this was not the same car that was ordered, specifically, and that when received it was in a worthless condition.

"If you find from this evidence that it was not the same car, but a different car, or that it was worthless and unfit for the purpose for which it was purchased, and incapable of being used as such, you will answer the issue '$100.' "

The defendant excepted.

There was also a motion for judgment of nonsuit, which was denied, and the defendant excepted.

There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.

*P. W. Glidewell and Manning & Kitchin for plaintiff.*
*Brooks, Sapp & Williams for defendant.*

ALLEN, J.  It was decided in *Ashford v. Shrader,* 167 N. C., 48, that although there is no implied warranty as to quality in the sale of personal property, the seller is held to the duty of furnishing property in compliance with the contract of sale—that is, at least merchantable or salable; and to this we may add that it shall be capable of being used, if intended for use.

This decision and others of like import in our reports (*Medicine Co. v. Davenport,* 163 N. C., 297; *Tomlinson v. Morgan,* 166 N. C., 557;

*Grocery Co. v. Vernoy,* 167 N. C., 427) rest upon the presumption that both buyer and seller are acting honestly and with no intention to cheat or defraud, and as "the purchaser cannot be supposed to buy goods to lay them on a dunghill," as expressed by *Lord Ellenborough* in *Gardner v. Gray,* 4 Campbell, 143, it will not be assumed that the seller desires to obtain money for a worthless article.

His Honor applied this rule in his charge to the jury, and the defendant, while admitting its correctness in proper cases, insists that it has no application here, because the defendant wrote the plaintiff on 12 March, before the contract was closed, that it would not guarantee the condition of the hearse.

The meaning of the word "condition" is not clear, but it is certain that the defendant was not providing against the sale of a worthless article, because in the same letter he assigns as his reason for not guaranteeing condition the great room for difference of opinion as to the *value* of second-hand hearses, and in the next paragraph says: "We understand the hearse will be shipped to the buyer with lamps, curtains, pole, and *everything ready for use,*" and again, that its representative, who had seen the hearse, advised that it was worth every dollar the defendant was asking for it.

Crediting the defendant with the honesty of purpose declared in the statement in the letter, that "it is not our intention to deceive any purchaser of goods from us," the defendant thought it was selling and intended to sell a thing of value, ready for use and worth $100, but was not willing to guarantee the condition or quality, as there was so much difference of opinion as to the value of second-hand hearses.

As thus understood, the refusal to guarantee condition means only a refusal to warrant as to quality, and although the law writes this into every contract for the sale of personal property—that in the absence of express agreement there shall be no warranty as to quality—it holds the seller to the duty of furnishing an article merchantable or salable or that can be used. If so, why should the obligation of the seller be less because he writes in the contract what the law would place there? In other words, if the law writes into a contract of sale that there is no warranty as to the quality of the goods sold, and still holds the seller to the duty of furnishing an article that is merchantable or salable, or one that can be used, why does not the same duty rest upon the seller when he, instead of the law, writes into the contract that he will not warrant the quality?

It may be said that this gives no effect to the language used, and strikes down one of the terms of the contract; and this would be true but for the correspondence preceding the letter of 12 March.

It appears, however, that the plaintiff wrote the defendant on 27 February that it was "in the market for a *good* second-hand funeral car,"

and that the defendant replied on 1 March, "We are glad to hear, from your favor of the 27th inst., that you are in the market for a *good* light-weight, second-hand black funeral car. Accordingly, we inclose herewith the following designs"; and effect may be given to the refusal to guarantee by relieving the defendant from the possibility of liability upon an express warranty as to quality.

We are therefore of opinion that the charge of his Honor is supported by reason and authority.

There are several exceptions in the record, but all of them relied on by the defendant are dependent upon the question considered and decided.

There was also evidence upon the part of the plaintiff that the hearse was heavy weight, when he had contracted for one of light weight, and that while the description in the design called for steel tires, those on the hearse sent were tires made for rubber, on which there was no rubber.

No error.