### SWIFT & COMPANY ET AL. v. ALBIN AYDLETT.

(Filed 20 October, 1926.)

**1. Bills and Notes—Negotiable Instruments — Actions and Defenses—Consideration—Fertilizers—Statutes.**

A total absence of consideration received by the maker of a negotiable note is a matter of defense by the maker in an action brought thereon by the original payee of the note, and not against a holder thereof in due course purchasing without knowledge of the defect in the instrument. C. S., 3008, 3033.

**2. Same—Vendor and Purchaser—Implied Warranty.**

In proper instances the user of fertilizers may show in defense of an action by the original payee of a promissory note given to the vendor manufacturer in payment thereof, that the fertilizers delivered to and used by him were useless or not beneficial for the purpose for which they were bought, and which were in contemplation of both of the parties at the time of the transaction, in the absence of opportunity for inspection; or when not observable until some time after the planting of the crop.

**3. Same—Express Provisions as to No Warranty of Use.**

A user of fertilizers may avail himself of a defense upon an implied warranty in an action brought by a manufacturer thereof on a note given by him for the purchase price, that the fertilizers furnished were worthless as such and for the purposes intended, though there is an express provision in the note sued on that it was without "warranty as to results from use or otherwise."

**4. Same—Caveat Emptor.**

The doctrine of *caveat emptor* does not apply to the purchaser and user of fertilizers in defense to an action by the latter to recover the purchase price, as against an implied warranty that the goods so bought were at least merchantable and were not absolutely worthless.

**5. Same—Tags—Ingredients—Statutes.**

Manufacturers and vendors of commercial fertilizers impliedly warrant that they contain the ingredients specified on the tags placed on the bags, according to the requirements of the statute. C. S., 4690.

**6. Same—Burden of Proof—Consideration—Contracts.**

The burden of proof is upon the manufacturer to show, in his action against the purchaser for the purchase price, that the goods were at

SWIFT & CO. v. AYDLETT.

least merchantable, and that the ingredients used in their manufacture were in accordance with the specifications upon the tags placed on the bags under the requirements of our statute, C. S., 4690, and the purchaser may defend the action by his evidence to the contrary as a failure of consideration.

**7. Contracts—Warranty—Failure of Consideration.**

While the vendor and purchaser of a commodity may agree upon the rule or measure of damages in relation to the latter's recovery upon the former's breach of warranty, express or implied, it will not apply where the goods sold are entirely valueless, and the consideration for the contract has completely failed.

**8. Constitutional Law—Contracts—Vendor and Purchaser—Fertilizers.**

The provisions of C. S., 4697 as to the requirements of the manufacturer of commercial fertilizer, are constitutional and valid.

**9. Fertilizers—Statutes—Actions—Defenses.**

Where the provisions of C. S., 4697, as to the State analysis of commercial fertilizers, etc., have not been complied with, the purchaser is not prevented from setting up his defense that the commodity sold was unfit for fertilizing his crop, for which purpose it had been sold and bought.

**10. Fertilizers—Vendor and Purchaser—Breach of Implied Warranty—Damages—Evidence.**

Where a user of fertilizer has been buying that of a certain analysis for years past, and found it productive of potatoes on his land, he may show by parol evidence, in the manufacturer's action to recover on a note given for the purchase price, that at the time in question he had used the same kind of fertilizer he had theretofore bought from the same manufacturer on the same land under practically the same weather conditions of cultivation, and the potatoes so grown were too small and stringy to be of any value, and such evidence is not excluded by C. S., 4697.

**11. Fertilizer—Vendor and Purchaser—Contracts—Evidence—Effect on Crop.**

The rule excluding evidence of the inferiority of fertilizers bought from the manufacturer and used in making the crop, unless the latter had had it analyzed by the State chemist, does not apply to evidence tending to show in this way that the fertilizer was valueless and not that which the manufacturer had contracted to sell. C. S., 4697.

**12. Issues—Pleadings—Evidence—Verdict—Motion to Strike Out Answer—Appeal and Error.**

In an action by a manufacturer to recover upon a note given for the purchase price of fertilizers, the plaintiff must plead and show that the fertilizer furnished was in accordance with the contract of sale, and where this has not been done, it is error for the court to submit issues to the jury upon these questions and refuse to strike out answers to these issues upon defendant's motion.

STACY, C. J., concurring in part.

APPEAL by both plaintiffs and defendant from judgment of *Grady, J.*, at January Term, 1926, of PASQUOTANK. No error in plaintiffs' appeal. Error in defendant's appeal. Remanded for judgment in accordance with opinion.

Civil action on note for $220.50, payable to order of plaintiffs, Swift & Company, dated 13 May, 1922, and due on or before 1 September, 1922. Said note was executed by defendant for value received in fertilizers and contains the following clause:

"The consideration of this note is commercial fertilizers sold to the undersigned without any warranty as to results from its use or otherwise. Said fertilizers have been inspected, tagged and branded under and in accordance with the laws of this State."

Defendant, in his answer, admits the execution of the note sued on, and in defense of plaintiffs' action thereon, pleads total failure of consideration: first, in that the fertilizers delivered by plaintiffs were absolutely worthless, and of no value or benefit to the crop, under which they were used by him; and, second, in that said fertilizers did not contain the proper ingredients to produce good potatoes and to produce them for the early market, as represented by plaintiffs.

Defendant offered evidence tending to show that the commercial fertilizers which he bought of plaintiffs in 1922 were the kind which he had bought of plaintiffs, and used under his potato crop, during previous years. It was Swift's 8-3-3, and when used during said years on the same land as that on which defendant planted potatoes in 1922, produced good potatoes for the early market; that defendant planted and cultivated his potato crop in 1922 in the same manner, and by the same methods that he had used in the previous years; that the weather conditions and growing season for his crop in 1922 were good; that he sowed the fertilizers delivered to him by plaintiffs in 1922 in the same quantity per acre, and by the same method that he had sowed the previous years, when he made good crops; that in 1922, his potatoes never got fit to dig; that he dug them and put them on the market, but got nothing for them because they were strings; that the land, without any fertilizers, would have produced such potatoes as he made in 1922; that defendant is a farmer, and has been raising sweet potatoes in Currituck County, where the land upon which he made his crop in 1922 is situate, for twenty years; that plaintiffs knew that he bought the fertilizers—Swift's 8-3-3—for sweet potatoes; that it is the kind of fertilizers adapted to sweet potatoes, and always used by defendant for that crop.

There was evidence that defendant planted his potato sprouts in 1922, about 1 May; that the fertilizers which plaintiffs delivered to him were sowed when the sprouts were planted; that potato sprouts, when

the seasons are good, usually start off well, and do not show any effect of fertilizers sowed under them until two or three weeks after they are planted; that if no fertilizers are used, they then begin to turn yellow, and do not thrive; that if commercial fertilizers are used, when the sprouts are set out, at the end of two or three weeks, they begin to grow, and soon thrive; that about the last of May or the first of June, 1922, when the effect of fertilizers, such as defendant had bought of plaintiffs, would ordinarily have first been observed, defendant's plants began to fail; that from then until the potatoes were dug about the first of August, defendant's crop did not show any effect from the fertilizers used under the plants; that from the time the sprouts were set out until defendant signed the note, the plants were growing satisfactorily; that sweet potato sprouts will grow, for the first week or two after they are planted, better without fertilizers than they will with fertilizers.

. Plaintiff in apt time objected to all testimony offered as evidence as to the results of the use of Swift's 8-3-3, under crops grown on defendant's land during years previous to 1922, and to all testimony as to the result of the fertilizers delivered to defendant of the crop of 1922; upon their appeal they assign as error the admission of this testimony as evidence upon the first issue.

No chemical analysis of the fertilizers delivered by plaintiff to defendant was offered as evidence by defendant; it is admitted in the pleadings that no chemical analysis of said fertilizers, showing a deficiency of ingredients, was made under the provisions of C. S., 4697, at the instance of either plaintiffs or defendant.

The issues submitted to the jury, with answers thereto, are as follows:

1. Did the plaintiffs fail to deliver to defendant commercial fertilizers of the analysis guaranteed on the bags, in accordance with their contract?  Answer: Yes.

2. If so, what was the value of the fertilizers that were delivered to defendant?  Answer: 33⅓ per cent ($73.50).

3. In what amount, if anything, is the defendant indebted to plaintiff?  Answer: $73.50.

Defendant excepted to the submission of the second and third issues, and upon appeal, assigns same as error.

From judgment upon the verdict, that plaintiffs recover of defendant the sum of $73.50, with interest and costs, both plaintiffs and defendant appealed to the Supreme Court.

*Ehringhaus & Hall and R. C. Lawrence for plaintiffs.*
*Aydlett & Simpson for defendant.*

CONNOR, J. The note sued upon in this action is identical in form with the note upon which plaintiffs sought to recover of defendant in *Swift v. Etheridge,* 190 N. C., 162. The defense in that action was the same as that pleaded in this action. The defense in each action is absence or failure of consideration for the note executed by defendant and payable to the order of plaintiff.

With respect to negotiable instruments, it is provided by statute, in this State, that "absence or failure of consideration is matter of defense as against any person not a holder in due course, and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise." C. S., 3008; Uniform Neg. Inst. Act, sec. 28.

This defense is available to the defendant in an action to recover upon a note, in form a negotiable instrument, the consideration for which, as recited therein, is commercial fertilizers sold by plaintiff to defendant. The fact that the consideration as appears in the face of the note is commercial fertilizers sold to the maker, cannot be held to deprive defendant, the vendee, of matters of defense, which by statute, are available in an action upon a negotiable instrument. It was held by this Court in the opinion written by *Clark, C. J.,* in *Jewelry Co. v. Stanfield,* 183 N. C., 10, that if goods delivered by the vendor to the vendee were worthless and unmerchantable, the provisions in the contract of sale that vendee might return any of the goods, and receive from the vendor other articles of the same grade, was no warranty at all except in form; that there was a total failure of consideration for the contract to pay the purchase price of the goods sold, and such failure was a good defense in an action by the vendor to recover of the vendee the purchase price of the goods. It was further held that the goods having been sold without opportunity for inspection, there was an implied warranty that they should at least be merchantable, citing in support of the decision *Main v. Field,* 144 N. C., 310; *Medicine Co. v. Davenport,* 163 N. C., 294; *Ashford v. Shrader,* 167 N. C., 45.

It is immaterial that defendant, vendee, gave to plaintiff, vendor, a note, in form negotiable, for the purchase price of the goods sold; the defense of failure of consideration is available to defendant, maker of the note, as against any person not a holder in due course. Plaintiff, Swift & Company, is the payee, and not holder in due course. C. S., 3033.

The doctrine of implied warranty in the sale of personal property is too well established in this jurisdiction now to be drawn in question. It should be extended rather than restricted. *Poovey v. Sugar Co.,* 191 N. C., 722; *Swift v. Etheridge, supra.* The harshness of the

common-law rule of *caveat emptor,* when strictly applied, makes it inconsistent with the principles upon which modern trade and commerce are conducted; the doctrine of implied warranty is more in accord with the principle that "honesty is the best policy," and that both vendor and vendee, by fair exchange of values, profit by a sale. In *Grocery Co. v. Vernoy,* 167 N. C., 427, the late *Justice Brown* says: "It is well settled by repeated decisions that on a sale of goods by name, there is a condition implied that they shall be merchantable and saleable under that name; and it is of no consequence whether the seller is the manufacturer or not, or whether the defect is hidden or might possibly be discoverable by inspection."

In *Furniture Co. v. Mfg. Co.,* 169 N. C., 41, in the opinion of *Allen, J.,* it is held that although there is no implied warranty as to quality in the sale of personal property, the seller is held to the duty of furnishing property in compliance with the contract of sale—that is, at least merchantable or saleable; and to this it is said, may be added that it shall be capable of being used if intended for use. *Ashford v. Shrader,* 167 N. C., 48 (implied warranty in the sale of oranges to be sold by the vendee, that oranges delivered are merchantable); *Grocery Co. v. Vernoy,* 167 N. C., 427 (implied warranty in sale of "Red-Marrow Beans" for food, that the beans delivered are edible, when cooked); *Medicine Co. v. Davenport,* 163 N. C., 297 (implied warranty in sale of medicines by manufacturer to dealer that the medicines delivered are at least merchantable); *Tomlinson v. Morgan,* 166 N. C., 557 (implied warranty in the sale of commercial fertilizers by a merchant to a farmer, that fertilizer delivered was suitable for crop); *Furniture Co. v. Mfg. Co., supra* (implied warranty in sale of a hearse to an undertaker, that the hearse delivered is capable of being used as a hearse); *Register Co. v. Bradshaw,* 174 N. C., 414 (implied warranty in sale of cash register by manufacturer to merchant for use in his business, that the register delivered is fit for use as a cash register). In a sale of an article of personal property by name which in itself represents that it is merchantable, or saleable or fit for a specific use, the law implies a warranty that the representations are true, although there is no express warranty to that effect. A vendor of an article of personal property, by name and description, cannot relieve himself of the obligation arising from the warranty implied by law to deliver an article which is at least merchantable, or saleable or fit for the use for which articles of that name and description are ordinarily sold and bought.

In *American Tank Co. v. Revert Oil Co.,* 108 Kan., 690, 196 Pac., 1111, 1112, cited in Williston on Sales, Vol. 1, p. 457 (2 ed.) in support

of the statement in the text, that "it should also be noticed that fitness for a particular purpose may be merely the equivalent of merchantability," it is said:

"A sale of a brand of manufactured article includes a contract that the article shall possess the qualities implied by the brand. 'Gold Drop Flour,' being a brand of flour, must make bread. *Kaull v. Blocker,* 107 Kan., 578, 193 Pac., 182; *Bunch v. Weil,* 72 Ark., 343, 80 S. W., 582, 65 L. R. A., 80 ('Capital Brand Flour, Extra Fancy'). A tank is, by definition, a receptacle for liquid. An order given for an oil tank makes known to the builder the purpose for which it is required—a storage of that kind of liquid—and a 1,600 barrel oil tank must be able to withstand the pressure of the designated quantity of oil under ordinary conditions of use. Implied warranty cases to this effect are numerous. Those which follow are illustrative. A whiskey barrel must not permit loss of whiskey by leakage, *Poland v. Miller,* 95 Ind., 387, 48 Am. Rep., 730; a fertilizer must give to land additional capacity to produce crops, *Wilcox, Gibbs & Co. v. Hall,* 53 Ga., 635; a potato digger must dig potatoes, *Hallock v. Cutler,* 71 Ill. App., 471; a mine pump must be able to pump water out of a mine, *Getty v. Rountree,* 2 Pin. (Wis.), 379, 54 Am. Rep., 138; a self-feeder must feed a threshing machine, *Parsons Co. v. Mallinger,* 122 Iowa, 703, 98 N. W., 580; a piano must be so constructed that it may be used as a musical instrument of that class, *Little v. G. E. Van Sycle & Co.,* 115 Mich., 480, 73 N. W., 554; a vessel built for a buyer must be seaworthy, 3 A. L. R., 622, annotation; a silo must preserve ensilage, *Indiana Silo Co. v. Harris,* 134 Ark., 218, 203 S. W., 581; an automobile must be capable of use as a vehicle, *Harvey v. Buick Motor Co.* (Mo. App.), 177 S. W., 774; a moving-picture screen must possess reflecting qualities *East End Amusement Co. v. Atmospheric S. Co.,* 171 N. Y. S., 283." See, also, *American Radiator Co. v. McKee,* 140 Ky., 105, 130 S. W., 977; *Parker v. Shaghelean Mass.,* Feb., 1823, 138 N. E., 236; *Kelsey v. J. W. Rengrose Nit. Co.,* 152 Wis., 499, 140 N. W., 66.

In *Swift v. Etheridge, supra,* it is held by this Court that manufacturers and vendors of commercial fertilizers, in this State, warrant that the fertilizers manufactured and sold by them contain chemical ingredients of the guaranteed analysis, required by statute to appear upon bags, barrels, or packages, in which they are delivered; this is a statutory warranty without which no commercial fertilizers may be sold in this State. C. S., 4690. It is similar to the statutory warranty required in the sale of "commercial feeding stuffs." C. S., 4724-4731; *Poovey v. Sugar Co.,* 191 N. C., 722. In this case it is held that a seller of "commercial feeding stuffs," as defined by law, must supply a commodity reasonably fit for the use contemplated by the parties to the

sale, and such as measures up to the requirements of the statute.    A seller of commercial fertilizer to a farmer for use on crops, upon the same principle, must deliver to his vendee a commodity which fulfills the warranty implied by law, that it is reasonably fit for the use contemplated by the parties to the sale, and also fulfills the warranty required by statute, that it contains chemical ingredients of the guaranteed analysis.

A vendor who, by his contract, has agreed to sell and deliver to his vendee commercial fertilizers,   cannot recover of his vendee the purchase price of such fertilizers, unless in his action to recover same he alleges and proves delivery, pursuant to his contract, of commercial fertilizers, containing chemical ingredients of the analysis guaranteed, as required by statute.   A vendee, to whom goods have been delivered, as commercial fertilizers, to be used by him, in defense of an action by his vendor for the purchase price, whether evidenced by his note or otherwise, upon his plea of failure of consideration, may show that there has been a breach of the warranty, implied by law, that the goods are commercial fertilizers, and therefore capable by use upon land of increasing the yield of crops, and also that there has been a breach of the warranty required by statute, that commercial fertilizers sold in this State contain chemical ingredients of the analysis guaranteed by representations made on the bag, barrel, or package in which they are delivered.   Evidence of a breach of warranty, express or implied, or as required by statute, is competent, not only in an action to recover damages for such breach, or upon counterclaim for such damages as a defense to recovery of judgment for the purchase price, but also to prove failure of consideration when such failure is pleaded in defense of a recovery of the purchase price of the goods sold, 8 C. J., 754.  *Brantley v. Thomas,* 22 Tex., 270, 73 Am. Dec., 264, annotated; *Perley v. Balch,* 23 Peck (Mass.), 283, 34 Am. Dec., 56, annotated.

Parol evidence is competent, as between the original parties to a note, to show failure of consideration when pleaded as a defense.   The admission of such evidence for this purpose is not in violation of the well-settled rule that parol evidence will not be admitted to alter, vary or contradict a written instrument.   3 R. C. L., p. 139, sec. 139, note 3, and cases cited.   In note to *Pryor v. Ludden & Bates Southern Music House,* 134 Ga., 288, 67 S. E., 654, 28 L. R. A. (N. S.), 267, the editor says: "The weight of authority is in accord with the decision in *Pryor v. Southern Music House* in holding that the breach of a parol warranty may be shown as a defense *pro tanto* in an action between the original parties to a note given for the purchase price."   Where the defense is total failure of consideration, defendant may show by parol evidence that the goods purchased by him were not delivered by plaintiff.

22—192

It is the contention of plaintiffs upon this appeal that evidence as to the results of the use of Swift's 8-3-3, upon defendant's land, during years previous to 1922, and during the year 1922, for the purpose of proving defendant's allegation that the fertilizers delivered and used by him in 1922, was not Swift's 8-3-3, as purchased by him, was incompetent and not admissible: first, because of the stipulation in the note that commercial fertilizers were sold to defendant without any warranty as to results from its use, or otherwise; second, because under C. S., 4697, no suit for damages from results of use of fertilizers may be brought in this State except after chemical analysis, showing a deficiency of ingredients; and third, because such evidence has no probative value, and is uncertain and speculative.

First. The stipulation in the contract of sale, as recited in the note, that there was no warranty as to results of the use of the fertilizers, or otherwise, is not a contractual rule of evidence agreed upon by the parties, for the purpose of excluding evidence as to such results, which would otherwise be competent. *Fertilizer Works v. Aiken,* 175 N. C., 398; *Carter v. McGill,* 171 N. C., 775, *S. c.,* 168 N. C., 507; *Guano Co. v. Livestock Co.,* 168 N. C., 442; *Germofort v. Cathcart,* 104 S. C., 125; *Allen v. Young,* 62 Ga., 617. Its manifest purpose was to relieve plaintiffs of liability for damages for a breach of a warranty, which in the absence of such stipulation, would have been implied by law. It cannot be held that it has any further effect than to accomplish this purpose. *Fert. Works v. Aiken, supra; Guano Co. v. Livestock Co., supra; Piano Co. v. Kennedy,* 152 N. C., 196. The stipulation is not broad enough to exclude, and does not exclude as evidence to sustain defendant's plea of failure of consideration, testimony as to the effect of the use upon defendant's crop of the fertilizer delivered to him by plaintiff. It ought not and cannot be held as law that a vendor who has sold a well-known article which has value only for a definite, specific purpose, by implication of law, warrants that the article delivered is the article sold, and may in the contract of sale stipulate that he shall be relieved of his obligation to deliver the very article which he has agreed to deliver in performance of his contractual obligation. The parties to a contract may by stipulation agree upon a rule of evidence to be applied in a controversy between them as to the subject-matter of the sale; they may agree as to the damages which either may recover for a breach of the contract by the other; they may, by stipulation, limit the liability of one of the parties to the other by reason of his contractual obligations; a stipulation, however, by which the vendee would be liable for the full purchase price as fixed by the contract, for the goods sold, although the vendor has failed to deliver goods in accordance with his contract, presents a different question. Stipulation in the

note upon which this action is brought, may be enforceable in an action to recover damages by the vendee of the vendor, resulting from the use of the fertilizer; it cannot be construed, however, as relieving plaintiffs of their obligation under the contract, to deliver to defendant commercial fertilizers, which, when used upon land, will increase the yield of crops planted and cultivated thereon. To hold with plaintiff's contention, would permit a vendor to sell his vendee commercial fertilizers and to recover the full purchase price as fixed by the contract of sale, whether the article delivered to the vendee was commercial fertilizer or not. Plaintiffs neither desire nor seek this result, for they insist that they have fully complied with their contract of sale; defendant, however, contends otherwise; the issue of fact thus raised and submitted to a jury must be determined by evidence, to be considered by the jury, under proper instructions as to the law applicable to such evidence.

Second. The validity of C. S., 4697 was challenged in *Jones v. Guano Company,* 183 N. C., 338, 264 U. S., 171, 68 L. Ed., 623, on the ground that it is unreasonable in its provisions and impossible of fulfillment; it was contended also that the statute is unconstitutional. The challenge was not sustained in this Court. In the opinion written for this Court by *Stacy, J.,* it was held that the statute was not unreasonable, or unconstitutional. The judgment dismissing that action, which was to recover damages resulting from the use of fertilizers on crops, upon the allegation that the fertilizers were deficient in chemical ingredients, because of failure to comply with C. S., 4697, with respect to a chemical analysis, was affirmed. It is said, "There is nothing in the statute which impairs the right of contract, and we think it is constitutional. *Fertilizing Co. v. Thomas,* 181 N. C., 274." A chemical analysis, showing deficiency in chemical ingredients is a condition precedent to an action to recover damages, or to defeat or reduce recovery on note for the purchase price by counterclaim for damages, unless the parties to the sale contract otherwise, as provided by the statute. On writ of error to the Supreme Court of the United States, the statute was sustained in an opinion written by *Butler, J.,* as not repugnant to either the due-process clause or the equal-protection clause of the 14th Amendment. It is said: "The 14th Amendment does not prevent a state from prescribing a reasonable and appropriate condition precedent to the bringing of a suit of a specified kind or class so long as the basis of distinction is real and the condition imposed has reasonable relation to a legitimate object." The statute, by its express terms applies only to an action to recover damages, and prescribes as a condition precedent to the bringing of such an action, a chemical analysis, showing a deficiency in chemical ingredients. It has been held to apply to a counterclaim for damages by a vendee to offset or reduce the amount which

the vendor is entitled to recover as the purchase price. *Pearsall v. Eakins,* 184 N. C., 291. There is nothing in the statute, however, which by reasonable construction, makes it applicable to a defense by the vendee upon his plea of total failure of consideration, involving identity of the goods delivered with the goods sold. There is no statutory condition precedent to the defense of failure of consideration in an action to recover the purchase price of commercial fertilizers, evidenced by vendee's note where such defense is available to him by C. S., 3008, nor is there any statutory rule requiring a chemical analysis as evidence to show deficiency of chemical ingredients upon vendee's allegation that the fertilizers delivered were not the fertilizers bought because of such deficiency. Testimony as to the results of the use of commercial fertilizers, upon crops, without a chemical analysis, by virtue of C. S., 4697, is not competent as evidence in an action by the vendee to recover damages of the vendor or upon a counterclaim by the vendee for damages in an action to recover the purchase price brought by the vendor; such testimony is not incompetent, however, by virtue of the statute, where the issue upon a plea of total failure of consideration involves only the identity of the goods delivered with the goods sold. A contract to sell commercial fertilizers of a guaranteed analysis as to chemical ingredients is not performed by the delivery of fertilizers containing ingredients of a different analysis; farmers in this State who contract to purchase commercial fertilizers containing chemical ingredients of a certain guaranteed analysis have learned by experience and observation that different crops, and lands of different qualities, require for satisfactory results from their use, fertilizers of different analysis as to essential ingredients. Scientific experiments, made from year to year under the supervision of the Department of Agriculture, or by manufacturers of commercial fertilizers themselves, confirm the lesson learned by practical farmers from their experience and observation. Manufacturers of commercial fertilizers recognize this fact; profiting by the results of experiments made by them and by others, they vary the analyses of their fertilizers to meet the different requirements of their customers, dependent upon the crops which they make, and upon the land on which the fertilizer is used. It cannot be held that a contract for the sale of fertilizers of a certain guaranteed analysis, which the vendee has purchased for use upon his land, in growing crops thereon, has been fulfilled by the delivery of fertilizers of a different analysis, or that the statute, C. S., 4697, excludes as evidence testimony as to the effect of fertilizers delivered and of fertilizers sold, which would, but for the statute, be competent upon an issue involving only the defense of failure of consideration, for that the fertilizers delivered were not the

fertilizers bought. Experienced farmers have no difficulty, while crops are growing, or after they have matured, in determining as a basis for the exercise of judgment in purchasing fertilizers, whether any fertilizers have been used under them or not, or whether fertilizers used under one crop are the same, for all practical purposes, as fertilizers used under another crop, on the same land, during different years, when the method of cultivation and the growing seasons for the different years are practically the same. Their ability to do this, in their opinion, justifies the expenditure each year by the farmers of this State of large sums of money in the purchase of commercial fertilizers. The manufacture and sale in this State of commercial fertilizers have grown to large proportions because the farmers of the State have learned that there is practical as well as scientific justification for the purchase and use of commercial fertilizers in growing crops on lands in this State.

Third. Testimony tending to show the effect of commercial fertilizers of the guaranteed chemical analysis, purchased by defendant of plaintiffs, upon crops of previous years, and the effect of the fertilizer delivered and used on the crops of 1922 offered as evidence by defendant to sustain his contention that the latter was not of the analysis guaranteed, was not incompetent because it lacked probative value, was uncertain and speculative. Defendant has laid the foundation for the admission of such evidence, in accordance with opinions of this Court.

In *Guano Co. v. Livestock Co.*, 168 N. C., 442, L. R. A. 1915 D, *Justice Walker*, writing the opinion for this Court, says: "We are of the opinion that notwithstanding the stipulation as to nonliability for results, evidence of the effect of any particular fertilizer upon crops is competent, under certain conditions, to prove that it did not contain the guaranteed ingredients, or in the proportions specified on the label put on the bag." He cites, in support of the opinion in this respect, the following quotation from *Jones v. Cordele Guano Co.*, 94 Ga., 14: "While it is true that the note sued on in the present case contained an express stipulation that the makers purchased on their own judgment and waived any guarantee as to the effects of the fertilizers on their crops, we think they are nevertheless entitled to show that their crops derived no benefit from the use of the fertilizers in question. It was competent for them to do this, not for the purpose of repudiating or varying the terms of their written contract, or of holding the guano company to a guarantee it had expressly declined to make, but to show that in point of fact the guano did not come up to the guaranteed analysis branded on the sacks, as required by law. In other words, it was the right of defendants to show that this guano did not contain the chemical ingredients set forth in the analysis. If the guano failed to produce any beneficial effect on the crops, under favorable auspices,

this fact would at least tend to show that it did not contain the fertilizing elements in the proportions specified in the analysis branded on the sacks." Evidence as to the effect of the fertilizers upon crops is held to be admissible, not only for the purpose of corroboration, but also as substantive evidence, for, says the learned *Justice,* whose opinion gives evidence of his usual care and exhaustive investigation of authorities, "As Cervantes wisely said in his *Don Quixote,* 'the proof of the pudding is the eating,' and by analogy the proof of the fertilizer is the using of it. It is practical instead of scientific proof, but the evidence should be admitted, cautiously and with proper and full safeguards so as by eliminating the speculative elements to show clearly the causal connection between the fertilizer used and the loss or diminution of the crop. Unless the foundation for such proof is well laid, it lacks in probative force as it has not been removed from the realm of speculation, and is only conjectural, and, of course, unreliable." *Tomlinson v. Morgan* is cited with approval as sustaining the decision, although it is said that there is a radical difference between the facts in the two cases. *Guano Co. v. Livestock Co.,* and *Tomlinson v. Morgan* have not been overruled in subsequent decisions of this Court; the law, as stated in the opinions in these cases, with respect to the admissibility of testimony as to the effect of fertilizers used upon crops, as evidence, has not been applied in subsequent decisions because it was held that the parties to the actions in which these decisions were rendered by contract stipulated that such evidence should not be competent in such actions, or that by virtue of the act of 1917, C. S., 4697, such actions could not be brought or maintained, except after a chemical analysis had been made.

It should be noted that in *Guano Co. v. Livestock Co.,* the vendee was a merchant who had purchased the fertilizers for sale to customers, whereas in the instant case the vendee is a farmer, who purchased the fertilizer for use under his crops. In *Carter v. McGill,* 168 N. C., 507, the defendant was a farmer who purchased fertilizers, which he alleged were deficient, from plaintiff, who was a merchant. Testimony as to the effect of the fertilizers upon defendant's crops was held competent as evidence to show breach of warranty implied by law that it was fit for use as commercial fertilizer. *Justice Walker* again says in his opinion in that case that "the purchaser of fertilizers may show a breach of warranty by evidence as to the effect of the fertilizer upon his crops, provided he first lays the foundation for such proof by showing that it was used under conditions favorable to a correct test of its value, such as land adapted to the growth of a particular crop for which it was purchased, proper cultivation and tillage, propitious weather or seasons, the general purpose being to exclude any element

which would render the evidence uncertain as to the cause of the loss or diminution of the crop, or rid it of its speculative character." Upon a rehearing the judgment was affirmed, 171 N. C., 775.

Since the opinions in *Carter v. McGill* were written, C. S., 4697 has been amended, providing now that no suit for damages from results of use of fertilizer may be brought except after analysis. By virtue of this statute, where there was no stipulation to the contrary in the contract of sale, as provided therein, it has been held in several cases that testimony as to the results of the use of fertilizers upon crops was properly excluded for the reason that no analysis showing deficiency of chemical ingredients in the fertilizers brought in question had been made. It was so held in actions to recover damages or to defeat recovery for purchase price by damages set up as counterclaim. *Fertilizer Works v. Aiken*, 175 N. C., 398; *Fertilizing Co. v. Thomas*, 181 N. C., 274. It has not been held, however, that such testimony is incompetent where the issue involves only the identity of fertilizers delivered with fertilizers sold and arises upon a plea of failure of consideration in defense of an action to recover the purchase price for the goods sold.

We, therefore, hold that plaintiffs' assignments of error based upon exceptions to the testimony offered by defendant are not sustained.

Defendant assigns as error (1) the submission of the second and third issues to the jury; (2) the refusal of the court to strike out these issues, with answers thereto; and (3) the refusal of the court to sign judgment tendered by defendant upon the answer to the first issue.

These assignments of error must be sustained. The issues excepted to do not arise upon the pleadings and we must hold that it was error to submit them to the jury, and to refuse to strike the issue, and the answers thereto from the record. We fail to find in the case on appeal any evidence as to the value of the fertilizers delivered by plaintiffs to defendant, which the jury has found were not the fertilizers which plaintiffs by their contract of sale, had agreed to deliver to defendant. The burden was upon plaintiffs to show that the fertilizers delivered had value and what such value, if any, was. Plaintiffs offered no evidence.

The jury having answered the first issue "Yes," and thereby sustained the plea of failure of consideration, it was error to refuse to sign the judgment tendered by defendant. The action must be remanded that judgment may be signed in accordance with this opinion. Such judgment will not bar plaintiffs' right, if any they have, to recover, in another action, the value of the fertilizers delivered to defendant, which cannot now be returned because they have been used by him. In order that judgment may be rendered in accordance with this opinion, the action is

Remanded.

SWIFT & Co. *v.* AYDLETT.

STACY, C. J., concurring in part:

1. The stipulation contained in the note deals with the question of the defendant's liability and excludes all warranties as to the results from the use of the fertilizers, or otherwise, except the one implied by law and necessary to create a legal obligation when all other warranties are negatived, to wit, that the goods manufactured by plaintiff and sold to the defendant as fertilizers are fertilizers and fit to be used as such. *DeWitt v. Berry,* 134 U. S., 306; *Furniture Co. v. Mfg. Co.,* 169 N. C., 41. It is not to be supposed, from the language employed, that the seller intended to sell and the purchaser intended to buy an utterly worthless article; for a bare agreement, with no consideration to support it, would be a *nudum pactum* and therefore unenforceable. *Swift & Co. v. Etheridge,* 190 N. C., 162; *Ashford v. Shrader,* 167 N. C., 45. It is established, by the clear weight of authority, that where there is a total failure of consideration, and the defendant has derived no benefit from the contract, such total failure, or want, of consideration may be shown in bar of plaintiff's right to recover on the contract. *Morrow v. Hanson,* 9 Ga., 398, 54 Am. Dec., 346; 6 R. C. L., 684.

Of course, as a man consents to bind himself so shall he be bound. *Nash v. Royster,* 189 N. C., 408. Such is the simple law of contract. *Clancy v. Overman,* 18 N. C., 402. But an agreement to pay a manufacturer for an article, intended by both buyer and seller to be used for some purpose, which turns out to be utterly worthless and unfit for use, is not enforceable in the courts, because of a want of consideration to support it. *Register Co. v. Bradshaw,* 174 N. C., 414; 6 R. C. L., 686. It is believed that a promise, however, express, must be regarded as *nude pact,* and not binding in law, if founded solely on considerations which the law holds altogether insufficient to create a legal obligation. *Hatchell v. Odom,* 19 N. C., 302. "If it (the article sold) be of no value to either party, it of course cannot be the basis of a sale"—*Ashe, J., in Johnston v. Smith,* 86 N. C., 498. And in the instant case, a stipulation that there is no warranty against the worthlessness of the fertilizers manufactured and sold by the plaintiff, if such it be, could avail nothing, if, in fact, the goods delivered were not fertilizers and were wholly valueless. Elliott on Contracts, Vol. I, p. 444, sec. 254. The stipulation cannot take the place of consideration, and it would fall with the balance of the contract for want of consideration. *Furniture Co. v. Mfg. Co.,* 169 N. C., 41. (Hearse case.)

This position is not at variance with the well-established rule that, in the sale of personal property, "an express warranty of quality excludes any implied warranty that the articles sold were merchantable or fit for their intended use." *DeWitt v. Berry,* 134 U. S., 306. Here,

there is no express warranty of quality; just the reverse, a refusal so to warrant, taking the plaintiff's interpretation of the contract, but the law requires the plaintiff, a manufacturer, to warrant that the goods sold as fertilizers are fertilizers, not that they will produce crops, but that they are fertilizers. *International Pavement Co. v. Smith,* 70 Mo. App., 264; *Johnson v. Latimer,* 71 Ga., 478. A manufacturer of goods may not take money from a customer under an agreement to deliver certain designated articles of merchandise, and then, by a bare stipulation in the contract, relieve himself from any and all obligation to deliver the articles sold, or any thing of value. And where a manufacturer agrees to sell fertilizers, he must deliver fertilizers, or else there is no consideration for the contract. *Hurlburt v. Kephart,* 50 Colo., 353.

Where there is an express warranty of quality in the sale of personal property, the law will imply no other, and the parties are remitted to their agreement *(Robinson v. Huffstetler,* 165 N. C., 459), but where there is no express warranty of quality of goods sold by a manufacturer, the law requires the manufacturer to deliver merchantable goods, or such as are suited to the known purposes of the buyer. *Dushane v. Benedict,* 120 U. S., 630.

In 13 C. J., at p. 367, under the heading "Failure of Consideration," it is said: "Strictly speaking there can, according to many respectable authorities, be no such thing as a failure of consideration. A promisor either receives the consideration he has bargained for or he does not. If he does not, there is no enforceable agreement, for there is no consideration. If the promisor gets what he bargains for there is no failure of consideration, although what he receives becomes less valuable or of no value at all. Failure of consideration is in fact simply want of consideration. Nevertheless it is laid down in a number of cases that when the consideration for a promise wholly fails the promise is without consideration and unenforceable. But this must mean that in a contract with an executory consideration, the execution of the consideration is a condition precedent to the liability on the promise, and the failure to execute the consideration discharges the promisor."

See, also, *Loxterkamp v. Lininger Implement Co.,* 147 Iowa, 29, as reported in 33 L. R. A. (N. S.), 501, with valuable note by the annotator.

The case of *Guano Co. v. Livestock Co.,* 168 N. C., 442, correctly states the law as applied to the facts of that case. The evidence there offered did not go to a want, or failure, of consideration, but to the inferiority of the goods delivered under the contract. Herein lies the distinction between that case and the case of *Swift & Co. v. Etheridge,* 190 N. C., 162. Likewise, the cases of *Fertilizing Co. v. Thomas,* 181 N. C., 274, *Fertilizer Works v. Aiken,* 175 N. C., 398, and *Tomlin-*

*son v. Morgan,* 166 N. C., 557, are distinguishable by reason of the pe-
culiar facts appearing in each case.

2. The statute, C. S., 4697, deals largely with the question of evi-
dence, and provides that no suit for shortage, or damage to crops, re-
sulting from the use of fertilizers, may be brought, except after chemical
analysis showing deficiency of ingredients, unless the dealer has been
selling goods that are outlawed by the statute, or has offered for sale
in this State, during the season, dishonest or fraudulent goods. *Pearsall
v. Eakins,* 184 N. C., 291; *Jones v. Guano Co.,* 183 N. C., 338; *Ferti-
lizer Works v. Aiken,* 175 N. C., 398. The pertinent provision of the
statute is as follows: *"Provided,* that no suit for damages from results
of use of fertilizer may be brought except after chemical analysis show-
ing deficiency of ingredients, unless it shall appear to the department
of agriculture that the manufacturer of said fertilizer in question has,
in the manufacture of other goods offered in this State during such
season, employed such ingredients as are outlawed by the provisions
of this article, or unless it shall appear to the department of agriculture
that the manufacturer of such fertilizer has offered for sale during that
season any kind of dishonest or fraudulent goods."

The chemical analysis is not required to be completed before the
fertilizers are used or put in the ground; samples may be taken, the
analysis made later and preserved as evidence to be used in case dam-
ages are sustained as a result of the use of the fertilizers.

Speaking to the question in *Jones v. Union Guano Co.,* 264 U. S.,
171, *Mr. Justice Butler* said: "The act does not deprive purchasers of
any right or cause of action. On the contrary, it gives additional
rights and remedies to one who purchases for his own use fertilizer
below the guaranteed value in plant food. The terms of the statute
are not made exclusive. Under the act the parties were free to deal
on other terms. *Fertilizer Works v. Aiken,* (1918) 175 N. C., 398, 402;
*Fertilizing Co. v. Thomas,* (1921) 181 N. C., 274, 283. The ingredients
of fertilizers can be ascertained definitely by chemical analysis. The
department is required to provide chemists and equipment and to make
and report analysis of all fertilizers sent in by purchasers or consumers.
The requirement imposed is reasonable and seems well calculated to
safeguard against uncertainty, conjecture and mistake. The analysis
is not made conclusive. Other evidence may be introduced by either
party. The determination of the department is not substituted for a
trial in court."

But this statute, C. S., 4697, it would seem, was not intended to apply
to a case like the present. The plaintiff is suing on a negotiable in-
strument, and C. S., 3008 provides that an absence or failure of con-
sideration is a matter of defense as between the original parties to a

negotiable instrument, and partial failure of consideration is a defense *pro tanto,* whether the failure be an ascertained and liquidated amount or otherwise. The defendant is not suing to recover for shortage or damage to his crops resulting from the use of the fertilizers, but he is setting up, under the negotiable instrument law, an absence or failure of consideration, as a defense to the note sued on.

He may offer evidence tending to show the want of results from the use of the article furnished by plaintiff, if a proper basis be laid therefor, not for the purpose of repudiating or varying the terms of his written contract, or of holding the guano company to a warranty it has expressly declined to make, but to show, if he can, a failure of consideration, which, if established, is a valid defense to the note in suit. *Tomlinson v. Morgan,* 166 N. C., 557; *Jones v. Cordele Guano Co.,* 94 Ga., 14. And by what better evidence, in the absence of a chemical analysis, can the defendant demonstrate the worthlessness of the article furnished than to show that it had no effect on his crops? "The proof of the pudding is the eating," says Cervantes in his *Don Quixote,* and so by analogy the proof of the fertilizer is the using of it. True, this kind of evidence is not scientifically accurate, and it should be admitted cautiously, with proper safeguards, nevertheless, it has some probative value and is not wholly conjectural. *Guano Co. v. Livestock Co.,* 168 N. C., 442. It is not excluded by the stipulation in the contract, or by the provisions of the statute.

The defendant, in effect, says to the plaintiff: "I am not asking for anything on acccount of the failure of my crop, though you may have occasioned it. This loss I am compelled to bear, both because of the stipulation in the contract and the terms of the statute, it being conceded that no chemical analysis was made by the State chemist. But under a contract to purchase fertilizer, I ought not to be required to pay for something that is not fertilizer, or for a fertilizer that has not been delivered."

The extent of the plaintiff's liability, under this interpretation, is limited to the price agreed to be paid for the fertilizer, and if the article delivered be worthless, the plaintiff has no just ground for complaint. It is enough that the defendant should lose his crops. This is all that his contract covers, and all that the statute contemplates. Why should he be compelled to pay for a worthless article, or denied the right to show that it is worthless, simply because he has agreed not to hold the plaintiff responsible for damages resulting from the use of fertilizers, and the statute precludes an action on his part for shortage, or damage to his crops, except after a chemical analysis showing deficiency of ingredients? He is not asking for such damages. His only request is that he be allowed to defend, in the present action, on the

ground of an absence or failure of consideration, which, if established is sufficient to defeat a recovery by the plaintiff. The defendant's right to disclaim liability on the note in suit, for want of consideration, has not been destroyed by agreement or taken away by the statute.

The note, being in form a negotiable instrument, imports prima facie a consideration, and where the defense of failure or want, of consideration is interposed to defeat a recovery, as in the instant suit, the burden, of course, is on the maker to establish the defense by the greater weight of the evidence. *Piner v. Brittain,* 165 N. C., 401; *Hunt v. Eure,* 188 N. C., 716.

But to my mind, the second defense "that said fertilizer did not contain the proper ingredients to produce good potatoes and to produce them for the early market, as represented by plaintiff," is not open to the defendant on the present record. The note was given after the fertilizer had been used, or put in the ground, and if it be conceded that it was fertilizer, fit to be used as such and having some value, then the parties have agreed upon the purchase price, represented by the amount of the note, and the defendant has stipulated that the plaintiff shall not be liable for failure of "results from its use or otherwise." If the defendant received the fertilizer for which the note was given, at the price agreed upon, and it had some value, he is bound by the contract which he thus voluntarily entered into. *Johnston v. Smith,* 86 N. C., 498; Elliott on Contracts (vol. 3), sec. 1891, 13 C. J., 368. It is not alleged that there was any fraud connected with the transaction. *Furst v. Merritt,* 190 N. C., 397.

In this view of the case, construing the answer to the first issue to be a finding that the article delivered was worthless, it would appear that the verdict is contradictory, hence, I think, the cause should be remanded for a new trial in accordance with the law as declared in the Court's opinion.