AMOS C. BLODGET AND JARED PATCHIN v. THE DETROIT SAFE COMPANY.

*Sale—Warranty—Limitation of time.*

1. It is undoubtedly the general rule that where one sells an article for a *particular* purpose he thereby warrants it fit for *that* purpose.

2. Where, in a suit for breach of warranty of a safe for *one* year the evidence failed to show the existence of the defects warranted against within *that* time, and the defects complained of appeared after four years' use of the safe, when the defendant offered to repair it for $65, or exchange it for a new one on payment of the difference in value, the court properly directed a verdict for the defendant ; the *limit* of defendant's liability, in point of *time,* being fixed by the contract, and a defense of a failure of consideration not being supported by the evidence.

Error to Wayne. (Hosmer, J.) Argued June 7, 1889. Decided October 18, 1889.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts, and points of counsel passed upon by the Court, are stated in the opinion.

*Henry M. Cheever,* for appellants.

*V. H. Lockwood,* for defendant.

LONG, J.   This is an action of *assumpsit* on the common counts, and the declaration contains two special counts for breach of warranty in the sale of a fire-proof safe.

The first special count alleges as the contract broken that—

"The said defendant undertook, and then and there faithfully promised the said plaintiffs, that the said safe was in good condition, and made of the best material, and in a workman-like manner, and then was, and would continue to be, a safe and proper protection of plaintiffs' property."

The second special count alleges as defendant's promise that—

"The said defendant undertook, and then and there faithfully promised the said plaintiffs, that the said mentioned safe at the time of the said sale thereof was of good and lasting material."

The plaintiffs are lawyers in Detroit, and the defendant a company that manufactures and sells burglar and fire-proof safes.  The plaintiffs ordered of defendant a fire proof safe, in writing as follows:

"DETROIT, Aug. 1, 1883.

"DETROIT SAFE CO.,
          "Detroit, Mich. :

"You will please ship us as soon as convenient one of your No. 15 fire-proof safes, with combination lock, to be delivered in office before tenth inst.   For this safe delivered at Detroit, room No. 28 Seitz block, Congress street W., Detroit, we hereby agree to pay to the order of the Detroit Safe Co., Detroit, Mich., $200 cash when safe is delivered as above. Cabinet as per plan on back of order.

"Safe to be warranted for one year against swelling or bulging or warping, or being defective in construction.

"It is hereby understood and agreed that the title to this safe shall remain in you until the above amount is paid in full.   This order is given subject to your approval; and, in consideration of above price, we hereby agree not to countermand this order, but to receive and pay for the same as above. No agreement of any kind not stated in this order shall become a part of this contract.

"BLODGET & PATCHIN."

The defendant accepted this order, prepared the cabinet, delivered the safe, and received a check for $200 on August 6, 1883.

It appears from plaintiffs' testimony that no material defect was apparent or discovered by them until sometime in March, 1888.

Sometime before that, and during the winter of 1887 and 1888, it was noticed that the doors would bind in the middle, and did not shut easily. The defendant was notified of this, and fixed it. A little time thereafter the doors would not shut. The defendant again sent a man, who found the doors bulged out, and difficult to shut or lock. Upon sounding the doors with a hammer, they flew to pieces. Defendant offered to repair it for $65, or offered to exchange a new one for it upon the difference being paid. This the plaintiffs refused to do, and brought suit upon the above warranty.

On the trial the court directed a verdict for the defendant, holding that the written contract governed the case; that the warranty was limited to one year; that there was no evidence that the safe was defectively constructed, but, on the contrary, the evidence showed that it was absolutely fireproof during the first year; that the defects of bulging, swelling, or rusting did not show themselves within a year; and that no claim of breach of warranty was made by plaintiffs during the year.

Claim was made on the trial, and the attention of the court called to it during his charge, that the money was paid without consideration, or that there was a partial failure of consideration, and the court held that question did not arise in the case.

The assignments of error only raise two questions:

1. That the court erred in directing the verdict for the defendant.

2. That the court erred in refusing to allow the plaintiffs to go to the jury upon the question of money paid without consideration.

The question presented first is whether there was anything to go to the jury. It is undoubtedly the general rule that where one sells an article for a particular purpose he thereby warrants it fit for that purpose.

Here the article was sold as a fire-proof safe, and to be used for such purpose. The plaintiffs exacted a written warranty, but limited the time in the warranty to one year. Over four years after the warranty and delivery the doors were found to have swollen so they could not be locked, and the coating of iron surrounding the cement filling of the doors and jambs was corroded through in patches. It had until that time been absolutely fire-proof, according to all the testimony. There was no evidence that any defect was discovered within the first year, or that the defects subsequently discovered were due to any causes existing during the first year, though plaintiffs' counsel argues in his brief that the defect was a latent one, and probably existed at the time of the sale. This argument is based upon the testimony of Mr. Wiley, the vice-president of the defendant company, who stated that in using the Louisville cement they sometimes had trouble, and found that perhaps one in five hundred would give trouble of some kind by expansion; but the witness testifies that the safe is just as fire-proof with this filling as though it had not been in that condition; that is, the safe is fire-proof until the filling has corroded through or produced the bulging.

From the testimony in the case it is made apparent that other safe companies were using this same cement, and it is not disputed upon this record but that the safe was made in a proper manner. Under these circumstances, the warranty only being made for one year, the court was correct in directing the verdict for the defendant.

The warranty was limited to one year. During that time no complaint was made, and no defect appeared, and there is no evidence in the case that any existed during that time.

The plaintiffs themselves inserted the warranty in the order, and fixed the time of its continuance, and this must be held to be the complete limit of liability in point of time.

Plaintiffs' counsel, however, insists here that the action may be treated as for fraud and deceit. The declaration averred a *scienter*, but the proofs do not warrant the assumption that the defendant, or its servants and agents, had any knowledge or information of any defects.

We need only add that the court was not in error in refusing to submit the case to the jury on the question of money paid without consideration. The defendant offered to repair it for $65 at the end of four years' use. It was not questioned but that it was of some value, and had served its purpose for that length of time. We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.