LITTLE *v.* G. E. VAN SYCKLE & CO.

SALE—IMPLIED WARRANTY.

> A dealer who sells a piano by a written contract which makes
> no reference to the subject of a warranty is bound by an im-
> plied warranty that the instrument is properly constructed,
> even though the contract expressly provides that "there is no
> agreement or understanding * * * otherwise than herein
> . mentioned."[1]

Error to Bay; Kelley, J., presiding. Submitted Octo-
ber 15, 1897. Decided January 4, 1898.

*Assumpsit* by Edward C. Little against G. E. Van
Syckle & Company, a corporation, for breach of war-
ranty. From a judgment for plaintiff, defendant brings
error. Affirmed.

*James E. Duffy* ( *T. A. E. & J. C. Weadock* and *R.
E. Van Syckle,* of counsel), for appellant.

*C. L. Collins,* for appellee.

MOORE, J. Plaintiff recovered a judgment against de-
fendant, from which judgment an appeal is taken. The
claim of plaintiff is that sometime about the 31st of
August, 1894, the defendant, through its president, sold to
the plaintiff a piano; that plaintiff informed the agent he
knew nothing about pianos, and was informed by the
agent, during the negotiations and at the time of the sale,
that the instrument which was delivered to plaintiff was
a first-class instrument of its kind and class, properly con-
structed, and in every respect a good instrument; and
that, relying upon those statements, plaintiff made the
purchase, and paid part of the contract price for the piano.
He also claimed that the instrument was not as repre-

---

[1] There is a review of the authorities on the implied warranty of
fitness of property bought for a special purpose in a note to *McQuaid*
v. *Ross,* (Wis.) 22 L. R. A. 187.

sented, but was a defective and worthless instrument. The particular defect claimed was that the block which held the pins to which the strings were attached would not hold the pins so they would retain their position, and that, as a result, the piano was constantly out of tune and worthless. The plaintiff also testified that the paper signed by him was not the contract under which he bought the piano, but represented his agreement in relation to the payments to be made upon the piano. The paper read as follows:

"$375.00.                BAY CITY, MICH., Aug. 31, 1894.

"Received of G. E. Van Syckle & Co. one instrument, known as Mozart piano, style upright, number 4,364, for the use of which I agree to pay to them or their order the sum of three hundred and seventy-five dollars, as follows: One hundred dollars to be paid in lumber on demand; fifty dollars Dec. 1st, 1894; fifty dollars June 1st, 1895; one hundred dollars Sept. 1st, 1895; and seventy-five dollars June 1st, 1896,—payable at the office of G. E. Van Syckle & Co., Bay City, Mich., or where they may direct, with interest at the rate of seven per cent. per annum, payable annually, and interest at the rate of seven per cent. per annum on all overdue payments until paid.

"I agree to safely keep and carefully use said instrument, and not remove it from Bay City without first obtaining the written consent of said G. E. Van Syckle & Co., and to keep said instrument insured for the benefit of said G. E. Van Syckle & Co. If I fail to make any payment at the time and place I have herein agreed, or fail to keep said instrument insured, or remove or attempt to remove the same without said written consent, or if any writ of any court shall be levied thereon, then this lease shall at once terminate, without notice to me, at the option of said G. E. Van Syckle & Co., and they may, without process of law, immediately take possession of said instrument, and for that purpose may enter any of my premises to search for or obtain it. If said G. E. Van Syckle & Co. shall repossess said instrument, I agree to pay all costs, expenses, and fees which they may pay or incur in taking or retaining such possession, with interest at the rate of seven per cent. per annum.

"The title and right to possession of said instrument

shall remain in G. E. Van Syckle & Co. until all of said payments, including said premium, if any, and said costs, expenses, and fees, if any, have been paid by me, and all my agreements in this contract have been performed. If I perform all my agreements in this contract at the time and in the manner I have herein agreed to perform them, then G. E. Van Syckle & Co. shall execute to me a bill of sale of said instrument.

"I also certify that I fully understand the terms of this contract, and that there is no agreement or understanding between the salesman and myself otherwise than herein mentioned.

"My address is 400 Adams St., P. O., Bay City, Bay County, Michigan.

[Signed]    "ED. C. LITTLE.
"Salesman,————.''

Printed across the face of the above, in red ink, was the following, viz.:

"We will not be responsible for any written or verbal contract or promise other than written or printed on the face of this contract."

Indorsed on back:

"Payments.
"1894
"12–18 _____ $200 00
"1895
"9–27 _____ 25 00
"10–8 _____ 25 00"

A great many errors are assigned. They have all had our attention; but we deem a discussion of them not essential, except as to those which grow out of the admission of parol testimony to prove the contract made by the parties. It is claimed by the defendant that the writing is the contract; that both parties are bound by it; and that it was not competent to introduce parol proof in relation to it. We do not deem it necessary to a disposition of this case to decide whether it was competent to give parol testimony of the special contract or not, for the reason that the law implies just such a warranty as the plaintiff sought to establish by express agreement. The contract is silent as to the construction and mechanism of

the piano.    Those who purchase such instruments for use are not usually familiar with their mechanism, and can determine the character of the instrument only by use. The doctrine of implied warranty is well established. The only difficulty lies in its application.    "Where one sells an article for a particular purpose, he thereby warrants it fit for that purpose."    *Blodget* v. *Safe Co.*, 76 Mich. 541.    A vendor of food impliedly warrants it fit for the purpose for which it is sold.    *Craft* v. *Parker, Webb & Co.*, 96 Mich. 245 (21 L. R. A. 139).    A dealer selling a machine impliedly warrants that it is a new one. *Grieb* v. *Cole*, 60 Mich. 397 (1 Am. St. Rep. 533).    A vendor of timber, selling by a scale made for him, impliedly warrants the competency of the scaler.    *Ortman* v. *Green*, 26 Mich. 209.    The rule is discussed and authorities cited in the majority opinion written by my Brother HOOKER in *McCray, etc., Cold-Storage Co.* v. *Woods*, 99 Mich. 269.

According to the testimony of the plaintiff, the mechanism of this instrument was so defective as to render it almost worthless.  Plaintiff was ignorant of the mechanism of such instruments, and, even if he had examined it, would not have been competent to determine whether it was properly constructed.    If we hold to the rule that the entire contract is expressed in this writing, it results in holding that there can be no implied warranty upon any written instrument of sale which makes no reference whatever to a warranty.    This I conceive is not the law.    If a vendor in such cases desires to avoid that warranty which the law implies, he must incorporate it in his contract, or insert therein a warranty which will exclude all others. Where a parol express warranty has been agreed upon outside the written contract, and that warranty is such as the law implies without any agreement, the vendee cannot be deprived of the benefit of this warranty by a provision in the contract that "there is no agreement or understanding between the salesman and myself otherwise than herein mentioned."    Such a clause is not in conflict with

the implied warranty which the law attaches to all such contracts.

Judgment is affirmed.

The other Justices concurred.