RANDALL *v.* J. A. FAY & EGAN CO.

1. SALES—CONTRACTS—IMPLIED WARRANTY OF FITNESS.
    With the sale of a molder, which was represented to be satisfactory for light moldings, sash, door, and blind work, a warranty that the machine, which the seller manufactured, was fit for its intended purpose is implied, and may be enforced in an action for damages, notwithstanding a clause in the contract of sale that the retention of the molder for more than thirty days should avoid all express or implied warranties, such contract provisions being waived by a promise to remedy defects, made within the thirty-day period.

2. PRINCIPAL AND AGENT—EVIDENCE OF AUTHORITY.
    Agency may be inferred from the fact that the circulars and letter heads of the defendant described the salesman, with whom the plaintiff dealt, as their agent for Michigan.

Error to Arenac; Sharpe, J.    Submitted April 26, 1909. (Docket No. 86.)    Decided December 10, 1909.

Assumpsit by Herman J. Randall against J. A. Fay &

Egan Company for breach of warranty. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*M. D. Snow,* for appellant.

*B. J. Henderson,* for appellee.

MONTGOMERY, J. This is an action brought to recover upon an implied warranty of fitness. The defendant's Michigan agent, Mr. George A. Jenks of Detroit, furnished plaintiff with a circular describing a No. 2, four-sided six-inch molder, containing, among other things, the statement:

"This machine is recommended for light moldings, sash, door and blind work or narrow ceiling. It is heavy and substantial, and all parts easy of access. It works four sides at one operation."

After some correspondence, a contract was made consisting of an order signed by plaintiff and subsequently accepted by defendant, describing the machine as a "No. 2 six-inch four-sided molding machine with four-sided slotted steel head on each spindle, and each head fitted with a pair of straight knives," etc., for the price of $310; $50 to be paid in cash, and the deferred payments evidenced by notes. It was agreed that the title should remain in the defendant until fully paid for, "and that a retention of the property forwarded, after thirty days from date of shipment, shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor, and void all its contracts of warranty expressed or implied."

The machine was shipped to plaintiff, and he immediately forwarded to the defendants, at their home office in Cincinnati, the notes provided for by the contract, and on the same day wrote to the State agent, Mr. Jenks, as follows:

"The molder is here, and I have it running, and it is the poorest set up rig I ever saw that was made by Fay. The pulley on the lower cylinder is put on with a set

screw that has no thread on it and stops every time it has a hard cut. There is no chip breaker on the outside side head and throws all the shavings and slivers back to the man behind the gun. The hood and chip breaker on the top head binds the stock so the feed will not take it through only as you set it up so it will not touch, also they did not send any extra bolts so if you want to make molding you have to take off the straight knives to get bolts to put on the molding knives. I have sent them the money and notes and now I want you to have them send me the bolts and set screw for cylinder also some kind of a rig for a chip breaker for outside head and oblige."

On receipt of this letter, Mr. Jenks wrote that he would have the bolts and set screws forwarded, but that a chip breaker was not used on the outside of the machine, so far as his knowledge extended, and later, evidently on receipt of a letter from the defendant home office, wrote that he was right in the supposition that a chip breaker was not furnished. On the 23d of September, the plaintiff again wrote the State agent, Jenks:

"Are you coming north soon? If so, I wish you would come to Standish, as I would like to show that machine so you could see just what it is. I am not satisfied with it at all, and I know when you see it you will make it satisfactory with me. Please let me know when you can come and oblige.

"Yours respectfully,
"H. J. RANDALL."

In reply to this the State agent wrote:

"Your letter of the 23d inst. is just received, and its contents noted. I am unable to say just at the present writing when I am coming up in your vicinity. However, it would not be necessary for me to come up especially to see you, for if you will write me fully just why it is that you are not satisfied with the six-inch molder I will take it up with our people directly and have it straightened out to your satisfaction. Perhaps you may need a cut of the machine to help you explain and I inclose it herewith. Please write me fully just exactly what the trouble is, and you can rest assured that I will do the best I can to have the matter straightened out to your satisfaction."

The next correspondence that is introduced is that of the following spring, when a letter appears to have been written to Mr. Jenks, complaining that he had not been up to see the machine. There is also testimony in the record that within 30 days from the receipt of the machine, the plaintiff wrote to Jenks telling him that he would not keep the machine in the condition it was in at that time. This was in answer to his letter of September 25th. He received reply from Jenks stating that he would take it up with his people right away, and that they would make the machine right, and the plaintiff need not worry about it; that he would fix it up satisfactorily. This all occurred within 30 days from the time the machine was received.

The case was submitted to the jury under an instruction that, under the circumstances, there was an implied warranty on the part of the defendant that the machine should be reasonably suitable for use as a molder; secondly, that it was the duty of the plaintiff in the first instance, if the machine was found unsuitable for the purpose, to return it within the 30 days fixed by the contract; thirdly, that if within 30 days Mr. Randall made complaints to the company, through its agent, that the machine was not as represented, and that the company agreed to make the defects good, that would be a waiver on the part of the company of this condition, and that if the machine did not in fact answer the terms of the contract, the plaintiff would have a right to recover.

It is the contention of the defendant that there was no warranty, and that if there was a warranty, the plaintiff's only remedy, in case the machine was not suitable for the purpose intended, was to return the property. We do not understand that this contract assumed to give the plaintiff the right to reject the machine at his pleasure. He could only reject it for cause, and that cause must be the implied undertaking on the part of the defendant that the machine was suitable for the purpose intended. It was a machine of defendant's own manufacture, and would carry with it an implied warranty that it was reasonably

fit for the use intended. *Blodget* v. *Detroit Safe Co.*, 76 Mich. 538 (43 N. W. 451); *Little* v. *Van Syckle & Co.*, 115 Mich. 480 (73 N. W. 554); *Tufts* v. *Verkuyl*, 124 Mich. 242 (82 N. W. 891). In addition to this, in the present case there was, in the circular sent to plaintiff, a very clear implication that the machine was suitable for the purpose intended, and was expressly recommended for that purpose. It is true that the remedy for a breach of this warranty was fixed by the contract, which remedy was the return of the machine. But unquestionably this was a remedy which might be waived. It was in fact waived, if there was authority in the agent to waive it. The testimony is undisputed, and it shows an agreement on the part of the defendant that it would be fixed up satisfactorily. Acting upon this, the plaintiff paid the notes, which constituted the purchase price, and then brought this action upon the contract. This agent was described in the letter heads which he used as the agent for Michigan. These letter heads were shown to have been in the possession of the plaintiff. Letters were produced from the defendants which contained this letter head. The circulars issued described Jenks as the Michigan agent, and we think the inference of authority from this description is clear. See *Austrian & Co.* v. *Springer*, 94 Mich. 343 (54 N. W. 50, 34 Am. St. Rep. 350), and *Westinghouse Co.* v. *Gainor*, 130 Mich. 393 (90 N. W. 52).

The circuit judge committed no error in the submission of the case to the jury, and the judgment will be affirmed.

OSTRANDER, HOOKER, MOORE, and BROOKE, JJ., concurred.