## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

#### OF

# NORTH DAKOTA

---

M. F. LEROY, Respondent, v. ANTON E. HAGEN, Appellant.

(175 N. W. 718.)

**Principal and agent — authority of agent to waive provisions of guaranty contract.**

1. An agent possessing general authority from his principal to act as manager in the sale, trade, and exchange of stallions under guaranty contracts, may waive the provisions thereof when possessed of such authority, even though there is a stipulation contained in such guaranty contract providing that salesman are forbidden, in any way, to change the printed form of the guaranty.

**Principal and agent — sale — where horse is warranted with right to return same under written contract, the question of the failure of horse to comply with warranty and authority of agent is for the jury.**

2. In an action on promissory notes given for the purchase price of a stallion, where a guaranty contract provided that the stallion should be serviceable and a 50 per cent foal getter, after fair trial on sure breeding mares, with the right of the purchaser to return the stallion and receive another horse of equal value that is supposed to be sure, provided such stallion was handled carefully, returned in a proper condition, and reports made monthly of the service of such stallion; and contained the specific provision that salesmen are forbidden, in any way, to change the printed form of the

44 N. D.—1.

guaranty contract, and *where* it appears that there is evidence that the stallion was not a 50 per cent foal getter, that the purchaser reported such fact to the agent who sold such stallion, and the agent thereupon advised the purchaser to keep the horse and try him another year, and that he would ship up another horse in exchange therefor, the agent possessing the authority so to make an exchange—*it is held* that the questions of the utility of the stallion under the contract, and the authority of the agent, were questions of fact for the jury; and that the trial court erred in directing a verdict against the defendant.

Opinion filed November 29, 1919.

Action on promissory notes given for the purchase price of a stallion. From a judgment in District Court, Burke County, *Leighton,* J., directed for the plaintiff, the defendant has appealed.

Reversed and new trial granted.

*E. R. Sinkler,* for appellant.

The motion made for a directed verdict in this case is in the nature of a demurrer to the evidence, and therefore all fair inferences from the evidence must be drawn in favor of the party against whom such verdict is directed.  Miller v. Klovstad, 14 N. D. 435; Schantz v. Northern P. R. Co. (N. D.) 173 N. W. 556.

*A. M. Thompson* and *Greenleaf & Wooledge,* for respondent.

BRONSON, J.   This is an action on two promissory notes for the purchase price of a stallion.  The trial court directed a verdict.  The defendant has appealed from the judgment entered thereupon.

In June, 1910, the defendant purchased a Shire stallion from one Holbert, of Iowa, under a guaranty contract.  Such contract guaranteed all stallions serviceable and breeding stallions; also that if the stallion should not prove himself a 50 per cent foal getter, after a fair trial, on sure breeding mares, the purchaser should return him to Iowa and receive another horse of equal value that is supposed to be sure.  Further, that the purchaser contracted that such stallion should be well handled and kept.  Further, that the vendor should not be bound by the conditions of the guaranty unless the purchaser submitted a monthly report during the season, in writing, showing the condition of the horse and number of mares tried and reserved each

month; by its terms the contract expired, and the vendor was released from any obligations, after April 1, 1911. In this contract there was printed in red ink the following:—

"Note: Each party to this purchase, by accepting this slip, accepts the above as complete and full terms of their purchase, and you are to take notice that salesmen are forbidden to, in any way, change the printed form of this guaranty, and, if changed, will not be accepted as changed by the firm."

The stallion was sold to the defendant by one Fisk, who came to the farm of the defendant with the horse, subsequently there made the sale, and produced the guaranty contract in question, which had theretofore been signed in blank by Holbert. There is evidence in the record that Fisk was the district manager of Holbert in North Dakota, and had full charge of all deals, including this particular deal with the defendant. That the defendant in 1910 bred to this horse some thirty or thirty-one mares, including thirteen mares of his own, and that there was produced from this breeding only one colt. That many of these mares had produced colts before and after, when bred to other stallions.

In the fall of 1910, as the defendant testifies, he notified Fisk that the horse was not a foal getter; that the horse was no good; Fisk admitted that this horse was not a sure foal getter, or that probably the horse was not very sure, but that the defendant should keep him another year, and that, if he did not then do better, they would give him another horse; Fisk further stated that the defendant should keep the horse; that he would ship up another horse; that the defendant could get back his old notes, and that then they wanted new papers from him. That, furthermore, it was not necessary to send the horse to Iowa, because he was shipping a horse up, and that they could exchange at Tolley or Kenmare.

The defendant kept the horse during the year 1911. During that season he bred him again to various mares, and the experience again was to the effect that the mares did not become in foal. Subsequently, pursuant to arrangement made with Fisk, he met him at Minot. Fisk had some horses there, but the parties did not agree upon an exchange concerning the horses there, but Fisk stated that a horse would be shipped up for the defendant, and that the defendant should keep the

stallion until he so did. In the year 1912 no other stallion was produced, so the defendant then, in July, 1912, wrote Holbert, stating that the horse did not come up to the warranty; that Mr. Fisk had so admitted; that he had taken up the matter with Mr. Fisk several times, and told him that he must either take the horse back and give a good horse in exchange, or else take the horse and return the notes; that Fisk had promised from time to time to attend to it, but nothing had been done. In the meantime the notes involved herein had been sold to the plaintiff. Fisk requested the defendant to send reports of the service of the stallion to Holbert, at Iowa, and defendant did send many reports. Defendant further testified that he kept the horse in a horsemanlike manner. In the spring of 1913 the stallion died.

Fisk, as a witness for the plaintiff, admitted, concerning the subsequent transactions, that he had heard most of the testimony of the defendant, and he did not object to very much of it; that the testimony of the defendant concerning the conversation in the fall of 1910 was substantially correct; that he took the responsibility upon himself after the contract had matured to try and help the defendant; that he wanted to treat the defendant right; that he was not authorized to change the contract, but did testify that he acted for Holbert; that he had worked for him for years; that he had authority to say what kind of notes he would take, and had authority to go on with this trade with the defendant; that this included the authority to take paper from him and to take up the papers that defendant had given; that even after the contract had expired he had authority to make a contract to suit himself and the customer; that he took responsibility upon himself, and this was satisfactory to Holbert; that if he made a contract of that kind it was all right with Holbert; that he had made these deals and always assumed that authority.

The defendant, as a defense, pleaded failure of consideration, breach of guaranty, and the agreement of Holbert, in respect thereto, to furnish another stallion.

Upon the action of the trial court there are just two legal questions presented upon the record: (1) Does the evidence disclose any question of fact of breach of the guaranty given by Holbert? (2) Did the agent of Holbert have authority to act so as to waive the express stipulations contained in the written contract?

It is well settled that all fair inferences must be drawn from the evidence submitted in favor of the party against whom a verdict has been directed, and that where honest and intelligent men may fairly differ upon evidence adduced and material upon the issues, it is error to withdraw such evidence from the consideration of the jury. John Miller Co. v. Klovstad, 14 N. D. 435, 440, 105 N. W. 164; Schantz v. Northern P. R. Co. 42 N. D. 377, 173 N. W. 558.

It is unquestioned upon this record that there is evidence sufficient to form a question of fact concerning the utility of the stallion, under the terms of the guaranty. The only serious question in this record is whether there exists any question of fact upon the authority of the agent Fisk to act contrary to, and thereby to waive, the express terms of the written guaranty, which provides in substance that salesmen are forbidden, in any way, to change the printed form of guaranty. We are satisfied upon this record that there is presented a question of fact of the authority of the agent in this regard. It is apparent that Holbert himself could have waived the terms of this guaranty contract, and that, if he himself had promised and agreed in the manner that the record discloses Fisk did, such action would be binding upon him. See 2 C. J. 609; note in 1 L.R.A.(N.S.) 142; Randall v. J. A. Fay & E. Co. 158 Mich. 630, 123 N. W. 574; Springfield Engine & Thresher Co. v. Kennedy, 7 Ind. App. 502, 34 N. E. 856; Peter v. Piano Mfg. Co. 21 S. D. 198, 110 N. W. 783. There is evidence in this record sufficient to form a question of fact, that Fisk, as district manager, possessed the authority from Holbert to act fully in his place, not only as a salesman, but to represent his principal fully. Such being our opinion upon this record, it follows that the trial court erred in directing a verdict. It is therefore ordered that the judgment be reversed and a new trial ordered, with costs to the appellant.