## SABRA et al. v. DAYTON RUBBER MFG. CO. OF DELAWARE.
### No. 5943.

Circuit Court of Appeals, Ninth Circuit.
Feb. 24, 1930.

Flanigan & Fields, Edw. J. Flanigan, Wm. C. Fields, and Earl Anderson, all of Phœnix, Ariz., for appellants.

Armstrong, Lewis & Kramer, of Phœnix, Ariz., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

The background of this case is disclosed in our opinion on a former appeal 31 F.(2d) 9. It seems that after the dismissal as to Mrs. K. Sabra and Mary E. Wintermute, which was the subject of that appeal, the cause proceeded against John Sabra, the remaining defendant, and culminated on June 1, 1928, in a judgment against him for $12,926.07, with interest thereon from April 16, 1924, from which no appeal was taken. Upon the going down of our mandate the case was brought on for trial against Mrs. K. Sabra and Mary E. Wintermute, with no change in, or addition to, the original pleadings. Without stating the purpose thereof and though not pleaded, plaintiff introduced the judgment against John Sabra, and thereafter both parties offered oral and documentary evidence. At the close of the testimony, the record recites, plaintiff "moved the court to instruct the jury to return a verdict for the plaintiff for the sum of $7,482.77 plus the amount of expense incurred as shown by the proof and the pleading, upon the ground and for the reason that the amount asked for in the case was res adjudicata" by virtue of the John Sabra judgment, "and upon the ground that no defense to the cause had been shown, which motion was granted by the court." Without advising whether it held both or only one of the grounds of the motion valid, the court instructed the jury to return a verdict in plaintiff's favor for $10,591.32, and such a verdict having been rendered, judgment for that amount was entered, from which the two defendants prosecute this appeal.

While, as already noted, the court failed to state upon what ground the motion was granted, it is perhaps reasonable to infer that it was on the theory of res adjudicata. As we shall see, the other ground assigned in the motion was so clearly untenable in point of fact that it seems highly improbable the court would have fallen into the error of accepting it. True, the two judgments exhibited a substantial disparity in amount but for that the record affords what would seem to be a clear explanation. Upon plaintiff's case in chief its credit manager testified that there was due from John Sabra a balance which, with expenses as alleged in its

complaint, would correspond precisely with the amount of the John Sabra judgment. But after the defendants had put in their testimony tending to rebut the claim, this witness was by plaintiff again put upon the stand, whereupon he conceded error in his former testimony in the sum of $2,334.75, and admitted that the claim should be reduced accordingly. And it turns out that this is the precise measure of the difference between the two judgments; in all other respects they are identical. That the reduction was inconsistent with the theory of res adjudicata, under which appellants would be bound by the John Sabra judgment, however unjust or erroneous it might be, does not under the circumstances very greatly weaken the probability that such was the theory upon which the court gave the peremptory instruction.

█ This theory, we think, is fundamentally erroneous. Under their contract appellants did not agree to pay any judgment against John Sabra. They undertook only to make good his defaults, and touching any such alleged defaults they were entitled to their day in court. They were not bound to defend a suit brought against Sabra, but only a suit brought against themselves. True, they were made parties to this suit and appeared therein; but when the court, holding that plaintiff had failed to prove a cause of action against them, dismissed them from the suit, they were no longer parties thereto. That was the state of the record when the Sabra judgment was entered. Under plaintiff's contention they were worse off after the court granted their motion for dismissal than they were before; for before, they had the right and opportunity to defend in their own names, whereas under plaintiff's theory they continued to stand in the same peril but with no right or opportunity further to be heard. Plaintiff has cited no authority, and it is altogether probable that none can be found, supporting such a view.

█ Briefly, to comment on the other possible but improbable alternative, namely that, the former judgment aside, the court held there was no question for the jury: By testimony, some of which was clearly hearsay, it may be said the plaintiff in its case in chief made a prima facie showing of a balance due from John Sabra of $9,817.52, besides expenses. As already explained, later, on rebuttal, its credit manager conceded this was excessive in the sum of $2,334.75. Under the circumstances and considering the character

of the testimony, it is thought the question of the balance due upon this account was for the jury even without regard to the proofs tendered on behalf of the defendants. But defendants offered testimony, some of which was received and some erroneously rejected, tending to show that a much smaller amount was due, and indeed that there had been a complete settlement. Whether some of the testimony rejected was declined because it was thought to be immaterial or because of the contention that defendants had not sufficiently shown the authority of plaintiff's representatives with whom Sabra testified he dealt, is not clear. It may be that the authority of Campbell was not established, but defendants offered to show dealings and negotiations with Naylor and Campbell when the two were together. The business with Sabra was transacted by plaintiff through its branch house at Kansas City, of which Naylor was the manager. Its bookkeeper there was Celia Fitzgerald, whom it produced as a witness; and she testified she was familiar with the contract in suit and kept the accounts of the business transactions thereunder. The account had in the first place been carried at plaintiff's Denver branch where it fell into confusion and as a consequence disputes arose with Sabra. These Naylor, acting for the plaintiff, settled. When the controversies herein arose, growing out of the Kansas City business, she further testified, Naylor sent Campbell to Phœnix to see Sabra and later Naylor himself went there, where, according to Sabra, they both negotiated with him. We think that, taken as a whole, the evidence made a prima facie showing that at least Naylor had the apparent authority to make adjustments and a settlement.

■ But entirely aside from these considerations and upon another branch of plaintiff's cause of action, the peremptory instruction was manifestly indefensible. Basing its claim upon a clause in the contract providing that the defendants would reimburse it "for all expense resulting from any deviation from the contract and for any attorney's fees, costs or expenses incurred in connection therewith" plaintiff averred in its complaint:

That on account of Sabra's alleged deviation it "incurred the following items of expense and attorney's fees, to wit:

Expenses incident to recovering * * * unsold casings and tubes ......................$ 135.67

Attorneys fees paid Fred Blair Townsend for legal services in recovery of said casings and tubes..1,225.80

Expenses Att'y T. L. Brown to Phœnix, Arizona and Toledo, Oregon, for interview with Debtor and guarantors ................... 747.50

Attorney's fees paid Thos. L. Brown for legal services in recovery of said casings and tubes.......... 999.58

"That all said amounts became due and were laid out and expended by plaintiff on and prior to April 16th, 1924, no part of which has been paid."

Under this provision of the contract plaintiff could at most recover only such expense as it necessarily or reasonably incurred, and there is no averment of necessity or reasonableness. By their answer defendants put in issue all these claims and the allegations respecting them. There was no proof at all touching the items of $135.67 and $747.50. As to the item of $1,225.80, Townsend testified to having received a smaller amount, and he was of the opinion that what he received was reasonable. There was no litigation, and indirectly plaintiff put in evidence that it regarded Townsend's charge excessive. As to the item of $999.58, there was testimony merely to the effect that it was paid to Brown, not that it was necessary or reasonable.

■ In the most favorable view to plaintiff, the only amount that, under the evidence, it would have had the right to recover, was that part of the $1,225.80 testified to by Townsend, and even that was a question for the jury and not for the court. Certainly there is no presumption that plaintiff necessarily or reasonably paid out for legal services in closing up a business transaction of the character disclosed, without suit, an amount exceeding $2,200, and, in addition thereto, personal expense of attorneys of approximately $900.

Notwithstanding this state of the record, the jury was peremptorily required to bring in a verdict for every cent of each item alleged in the complaint.

Reversed.