## ERLANGER TREMONT THEATRE CORPORATION v. ELLSMORE.

### No. 2572.

Circuit Court of Appeals, First Circuit.

March 18, 1932.

William G. Thompson, of Boston, Mass. (George E. Mears, of Boston, Mass., on the brief), for appellant.

George R. Farnum, of Boston, Mass. (Nathan Fink and MacPherson, Auerbach & Farnum, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge.

This is an action of tort brought against the Erlanger Theatre Corporation, appellant, hereinafter called the defendant, the corporate manager of the Tremont Theatre in Boston, to recover for personal injuries sustained November 8, 1929, by Evelyn Ellsmore, plaintiff, appellee, hereinafter called the plaintiff, resulting from a fall caused by the alleged negligence of a servant of the defendant.

The answer, in so far as material, sets forth a general denial, contributory negligence, and assumption of risk. The case was tried by jury, and at the close of all the evidence the defendant filed a motion for a directed verdict in its behalf which was denied.

The trial court submitted three questions to the jury to secure their special findings of fact as follows:

Question 1. Was the plaintiff at the time she received her injuries in the exercise of due care? Answer. Yes.

Question 2. Were the injuries caused by the negligence of the defendant's servant? Answer. Yes.

In answer to the third question the jury assessed the damages.

There was also a general verdict for the plaintiff, and judgment was entered on the verdict.

The defendant appealed to this court, alleging errors, ten in number. The only ones relied on in the brief and oral argument are assignments numbered 1 and 4, i. e., the denial of the motion for a directed verdict and the refusal to grant it on the ground that there was no evidence to establish the defendant's negligence contributing to the plaintiff's injury. On these assignments of error the defendant's position is that there was no evidence warranting the jury in finding that Ward, whose negligence was the only negligence relied on, was at the time of the accident a servant of the defendant, or a person for whose negligence the defendant was legally responsible.

In determining whether or not there was error in denying defendant's motion for a directed verdict, the evidence must be interpreted in its most favorable light for the plaintiff.

The following material facts are not disputed: The plaintiff, who was twenty-three years of age at the time of the trial, was a professional dancer of five or six years' experience, who not only had danced in the ensemble in musical comedies, but had specialized in, and was then studying, interpretive dancing and singing. At the time of her accident she was employed by the Vanities Producing Corporation as a dancer in the ensem-

ble of a traveling musical production known as "Fioretta," which was showing at the Tremont Theatre in Boston. The accident occurred during the evening performance and directly after the finale of the first act. The scene upon which the curtain had just dropped was arranged upon three horizontal levels above the stage floor, viz., a landing or platform about three feet wide and eighteen inches to two feet high above the stage floor, a third level made to represent the floor of a church and a raised altar eight feet or more above the stage floor and six feet above the middle platform. Access to the level of the church floor was by eight steps at the right of the stage as viewed by the audience. There was another set of steps on the left of the stage out of sight of the audience. Two steps on the left of the stage led from the stage floor to the low platform. Attached to the lower platform was a masking piece, which was used to cover the rough foundation of the platform and steps. This masking piece was made of a wooden frame covered with canvas and held in place by a pin or split hinge. The lower platform faced across the stage toward the audience and was put there to enable the girls who were in the ensemble to come down the eight-step stairway on to the platform and then off on to the stage. The plaintiff's part in the scene was to pose as a part of a "human altar." She carried a tall bar with a candle on top and as she entered the stage from the right, she crossed in front of it around to the hidden steps on the left, ascended the steps to the altar level where with other members of the cast she posed as a part of the altar. At the conclusion of the scene the plaintiff with the other girls came down from the altar level on to the church floor, handed their properties down to the stage hands, then descended the stairs on the right of the stage to the intermediate platform and from that platform to the level of the stage. When the plaintiff descended from the church floor to the lower platform she had nothing in her hands. Several girls were ahead of her and instead of waiting to go down the steps she started to step off the platform on to the stage. Plaintiff claims that just at that moment a stage hand or "grip" named Ward pulled the masking piece away from the platform, caught the plaintiff's toe, causing her to fall forward on to the stage floor striking on her left jaw and shoulder.

When the curtain was lowered on the first scene the stage setting had to be changed for the next scene. There was evidence from which it could be found that Ward was one of the men whose duty it was to assist in removing and setting stage properties for the different scenes. He was hired and paid by the defendant.

The jury found that the plaintiff was not guilty of contributory negligence. It also found that plaintiff's injuries were due to Ward's negligence in removing the masking piece at the moment the plaintiff was about to step down on to the stage floor. The question is whether there was evidence to support these findings. It is not contended that the plaintiff assumed the risk of injury in the manner described.

The main contention of counsel for the defendant and the point to which counsel on both sides devoted the main portions of their arguments is that, although hired by the Tremont Theatre and employed generally by it, yet in shifting scenes, which was the activity in which he was engaged at the time of the accident, Ward was acting under the orders of Hall, a stage carpenter of the Fioretta Company, and thereby became a lent servant loaned by the Tremont Theatre for a specific purpose to the Fioretta Company, and that while so let the Tremont Theatre, having parted with the right to direct and control his activities, ceased to be liable for his negligence.

The trial judge in his charge to the jury to which no exception was taken used the following language: "Nevertheless the defendant had a man on the job to see that these grips and employees were doing the work which they were hired to do, and for that reason I have reached the conclusion as a matter of law, that for whatever negligence—if there was any negligence on the part of any of the defendant's employees,—that the defendant must be held responsible for the resulting consequences of that negligent act."

As Ward was one of the employees of the defendant, hired and paid by the Tremont Theatre, the only interpretation the jury could put on the foregoing language of the court when applying it to the admitted facts was that, if they found that plaintiff's injury resulted from Ward's negligence, the defendant was liable. The jury were not instructed with reference to the law applicable to "lent servants," and no question of fact with reference thereto was submitted to the jury. The judge's charge was the law of the trial to which no exception was taken. Security Life Ins. Co. v. Brimmer (C. C. A.) 36 F.(2d) 176. See, also, Dow-Currier v. Henderson, 85 Hun, 300, 32 N. Y. S. 953. The question of whether or not Ward was a "lent" servant is

not open to consideration in this court. See Berry v. New York Central & H. R. R. Co., 202 Mass. 197, 204, 88 N. E. 588; Dugan v. Blue Hill Street Railway Co., 193 Mass. 431, 79 N. E. 748.

We are concerned only with the question of whether or not there was evidence from which the jury might reasonably find that the plaintiff's injuries resulted from Ward's negligence.

The plaintiff testified, in substance, that as she stepped a stage hand or "grip" pulled the masking piece, caught her toe, and she fell forward; that she heard the man called Ward; that she landed striking her left jaw, chin, and shoulder; that she was dazed and remembered people in back of her untangling her feet; that before the occurrence Ward was on her left a matter of three feet or more. On redirect examination she testified that when she fell it was towards the audience, out toward the front of the stage, and that this masking piece was under the edge of the scene's setup, the outer part of it facing the audience in the direction which she fell; that it was no part of her plan in getting down off the platform to step over the masking piece; that the masking piece, when it was in proper position, would not interfere with her movements on the stage and platform, and that it was not intended to do so. She further testified that the stage hands were not supposed to move anything until the cast were off the stage; that as she stepped the masking piece caught on her toe.

"Q. Did you have any instructions about vacating the set? A. Well, they told us—

"Q. Did you have any instructions and what were they? A. To get down any way we could.

"Q. Did the girls usually come to the front the same as you did time and time again? A. Yes, sir."

Julia Donahue, whose deposition was read to the jury, testified, in substance, that she was connected with the Fioretta show when it was playing at the Tremont Theatre in Boston, being a dancer in the ensemble; that she was acquainted with the plaintiff, who was also a member of the ensemble; that she was a candle bearer as was the plaintiff, and stood opposite the plaintiff on the upper platform; that after the scene she came down from the setting directly in back of the plaintiff; that the plaintiff was on the platform ready to step off; that there was a masking piece in front of this platform facing the audience; that it was covered with black velvet; that the plaintiff had her foot forward and shifted her weight to the other foot to step off the platform; that the "grip" stepped up at the same time plaintiff was stepping off and pulled the board from under her foot causing her to fall forward on her face or chin. She testified that the "grip's" name was Walter Ward. Witness was asked whether the masking piece that was pulled out caught against Miss Ellsmore's foot. Her answer was: "As I remember it, she had the front of her foot, I don't know whether it was the toe or not, on the masking piece." On cross-examination witness testified that the accident happened after the curtain was drawn; that there were two ways down from the platform, one to the right and one to the left; that there was no rush from the platform to the stage after the curtain was drawn; that she was directly behind the plaintiff, and that there was plenty of time to make the next number; that there were girls behind her stepping from the platform, and that she saw Ward before the plaintiff fell.

Julius F. Hall, a witness called in behalf of the defendant, testified that he was stage carpenter for the Fioretta show; that he did not see the accident, but that he saw the plaintiff at the end of the finale of the first act lying on the stage; that she was lying a couple of feet from the lower platform; that the front curtain had been dropped about a minute or two before he saw the plaintiff lying on the stage; that at the time he saw her other girls were coming down the steps from the other platform following her down, and that there were other girls who had preceded her.

Russell L. Ingersoll, called in behalf of the defendant, testified that he was the stage carpenter employed by the Tremont Theatre; that he was standing on the right side of the setting off stage watching the stage manager as he gave the signal for the curtain to go up and down; that he did not see the accident, but did see the plaintiff lying flat on the stage facing the audience, her head about six feet from the platform; that at that time there were four or five other persons with her; that the girls had not left the scene, and that there were persons still coming down the stairs.

Thomas Hoffman, called in behalf of the defendant, testified that he was a stage hand, and that at the time of the accident he was ten or fifteen feet back stage; that he did not see the accident, but heard the commotion and the sound of somebody falling, and as a result he walked down stage as they were lifting the plaintiff and setting her on the platform.

Walter Ward, called on behalf of the defendant, testified that he had been a stage hand for thirty-five years, and on the night of the accident was engaged by the Tremont Theatre to page the curtain; that he saw the plaintiff descend the upper flight of steps and turn on the lower platform where there was another shorter flight of steps to the stage proper; that there were more people following her; that he saw her stop at the edge of the lower platform instead of coming down the second flight of steps; that she stepped forward to jump from the platform; that she caught her heel on the top edge of the masking piece and plunged forward toward the audience.

In addition to the above testimony, witnesses called on behalf of the defendant testified that, when they entered the stage and saw Miss Ellsmore on the floor, none of the settings had been removed, and that the masking piece was in place.

The testimony outlined on behalf of the plaintiff that the masking piece had been removed, and that adduced by defendant denying it had been moved raised an issue of fact for the jury. The jury found that Ward's act was a negligent act resulting in plaintiff's injury. The credibility of the witnesses was for the determination of the jury. There was ample evidence from which the jury could find that plaintiff's injury resulted from Ward's negligence, and as this is the only question before us the judgment of the District Court is affirmed, with costs.

The judgment of the District Court is affirmed, with interest and costs.

WILSON, Circuit Judge, concurs in the result.