## GENERAL MOTORS TRUCK CO. v. TEXAS SUPPLY CO.

### No. 3375.

Circuit Court of Appeals, Fourth Circuit.

April 4, 1933.

R. Dorsey Watkins and Huntington Cairns, both of Baltimore, Md., for appellant.

F. Fulton Bramble and Randolph Barton, Jr., both of Baltimore, Md. (James P. Kelley, of Towson, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by the Texas Supply Company, a Maryland corporation, against General Motors Truck Company, a Michigan corporation, to recover the price of ten automobiles which the supply company claims were purchased from it by the truck company under an oral contract entered into on the latter's behalf by a duly authorized agent. There was a verdict and judgment for the supply company, and an appeal to this court by the truck company, which contends that there was no legally sufficient evidence to entitle the plaintiff to recover, and that the District Court should therefore have granted a motion for a directed verdict for the defendant. The only two questions urged on this appeal relate (1) to the authority of appellant's agent to enter into the contract, and (2) the enforceability of the contract under the statute of frauds.

It was shown by the plaintiff's evidence that the supply company is the transportation unit of a corporation engaged chiefly in road building, and handles the automobile trucks used in the work. On or about April 26, 1930, following certain unsuccessful negotiations between the supply company and the Baltimore branch of the truck company in regard to the purchase of ten General Motors trucks, the supply company purchased the trucks from the Brooks-Price Company of Towson, Md., an independent concern which dealt in General Motors trucks for its own profit. A salesman from the Baltimore branch of the truck company did, however, assist the Brooks-Price Company in making the sale. Attached to the contract of sale, as part thereof, was a warranty of the truck company as manufacturer whereby it warranted each motortruck to be free from defects in material and workmanship, but limited its obligation to the replacement of any part returned to it within ninety days, and found to be defective, and declared that it neither assumed nor authorized any other person to assume for it any other liability in connection with the sale of the vehicles.

Shortly after the trucks were delivered, they were found to operate poorly and to break down frequently, because of defective springs. For a considerable period of time, mechanics of both the truck company and the Brooks-Price Company attempted to remedy the defects, but without success. On or about July 20, 1930, in a conference at the Baltimore branch of the truck company, at which the president of the supply company and the branch manager of the truck company were present, the unsatisfactory condition of the trucks was discussed, and it was agreed that they should be returned to the General Motors branch in Baltimore, and shortly afterwards this was done; but no definite agreement of settlement between the parties was then made.

On August 3, 1930, Pat E. O'Connor, the Eastern regional manager of the General Motors Truck Corporation, with headquarters at Rochester, N. Y., wrote to the president of the supply company under the letterhead of the truck company, and among other things he said:

"The information was conveyed to me that you desire to return these trucks to Mr. Brooks and thus abrogate the contract which you have made with him. If you were dealing with the representatives of a mediocre concern, whose sole object was to sell you trucks and then forget about them, we could understand this attitude, but in case of the General Motors Truck Company, a corporation whose integrity and standing is unquestioned, we are certainly at a loss to follow your line of reasoning. * * * There is absolutely no reason why this matter cannot be adjusted to the satisfaction of all concerned, and what is necessary to bring this about, we feel sure can be worked out."

O'Connor had been corresponding frequently with the branch manager as to this matter, and, on August 15, 1930, came to Baltimore, and, together with the branch manager and Mr. Brooks, went to the office of the president of the supply company for a conference to work out a settlement. An oral agreement was made with O'Connor that the truck company should purchase from the supply company the chassis of the trucks for the sum of $7,823.06, which represented the original purchase price of the trucks at $14,-423.06, less $3,600, the value of the truck bodies and less $3,000 for the use of the trucks which the supply company had enjoyed. The defendant in the District Court

relied on the contention before the jury that the agreement to repurchase was made by the Brooks-Price Company rather than the truck company, but it is not denied that there was substantial evidence on this point to support the verdict in the plaintiff's favor.

The main contention of the defendant in this court is that there was not sufficient evidence of the authority of O'Connor to make the contract to warrant the submission of the issue to the jury. It was shown at the trial that he had no express authority, and that in fact it was the rule of the company, although unknown to the supply company, that only the General Motors' vice president, in charge of the truck division, was empowered to make a contract to accept the return of trucks previously sold. Appellant relies upon the rule that an agent, including a managing agent, has implied or apparent authority to purchase only such things as are necessary to effect the purposes of his agency, and cases are cited which hold that the principal is not bound by unusual purchases or purchases clearly detrimental to his interest. Loveland v. Kitterman, 44 S. D. 174, 183 N. W. 128; Carter v. Burnham, 31 Ark. 212; Latham v. Pledger, 11 Tex. 439; Beebe v. Equitable Mutual L. & E. Ass'n, 76 Iowa, 129, 40 N. W. 122.

It is, however, a misconception of the nature of the transaction here involved to view it simply as a purchase within the meaning of the above rule. None of the parties who carried out the transaction had any idea that the contract was entered into because the truck company wanted the trucks in its business. What the parties were seeking to do was to effect a settlement with a dissatisfied customer. It is to be remembered that, although the supply company did not buy the trucks directly from the truck company, the sale inured to its benefit as manufacturer, and it was bound, under its warranty, to make good the parts which had proved to be defective. There was no obligation to take back the trucks, but the business standing of the manufacturer and the reputation of the goods was at stake, and an agreement on the part of a representative of the manufacturer to make good the defects in a practical way was not calculated to cause the customer to doubt the extent of the agent's authority. That the agreement was made for the purpose of satisfying a customer who had just cause for complaint clearly appears not only from the considerations above outlined and the acts of all persons involved, but also from the letter of August 15, 1930, from O'Connor to the supply company, from which we have quoted above.

We have then a case for the application of the rule that the act of an agent within the apparent but not within the real scope of his authority is binding upon the principal where a loss would otherwise result to one who has in good faith relied on such apparent authority; an act being within the apparent scope of an agent's authority when a reasonably prudent person, having knowledge of the usages of the business, would be justified in supposing the agent is authorized to perform the act from the character of his known duties. Richmond Guano Co. v. E. I. Du Pont de Nemours & Co. (C. C. A.) 284 F. 803, 807. In the application of this rule, the courts have held that the circumstance that an agent has been given apparent authority to manage or represent the principal's business in a particular locality or section of the country may be taken into consideration in determining whether it is reasonable for one dealing with the agent to assume that he has power to make settlements or to rescind or modify contracts. Randall v. J. A. Fay & Egan Co., 158 Mich. 630, 123 N. W. 574; Van Santvoord v. Smith, 79 Minn. 316, 320, 82 N. W. 642; Leroy v. Hagen, 44 N. D. 1, 175 N. W. 718, 720; Hartford Life & Ann. Ins. Co. v. Hayden's Adm'r, 90 Ky. 39, 47, 13 S. W. 585; Sabra v. Dayton Rubber Mfg. Co. (C. C. A.) 38 F.(2d) 452, 454; Socony Burner Corp. v. McClare, 134 Misc. 58, 235 N. Y. S. 290; Sauble v. Gary South Coast Agency, 56 Cal. App. 606, 206 P. 141; Indianapolis Rolling Mill Co. v. St. Louis, etc., R. Co., 120 U. S. 256, 7 S. Ct. 542, 30 L. Ed. 639.

The appellant contends that the rule of apparent authority does not apply in the pending case because the evidence shows that there is a custom in the automobile industry that a branch manager has no authority to rescind a sale and to take back vehicles alleged by the purchaser to be defective. The evidence, however, does not indicate that such an official as a regional manager of a manufacturing corporation is denied authority to make such settlements by an established custom of the industry; so that we have merely to consider whether there was sufficient evidence to go to the jury to establish an apparent authority upon which a reasonably prudent man would be entitled to rely. We think that there was such evidence in this case. O'Connor was not merely the manager of a local branch. He was held out as the manufacturer's representative in a large

530

part of the United States, clothed with the title of "Eastern Regional Manager," and with the special duty of supervising sales in the territory assigned him. He was called in by the local agents of the company to adjust a bona fide complaint arising under a contract of sale of goods which the company had guaranteed. It was for the jury to say, under these circumstances, whether a person of ordinary care and prudence would have had reasonable grounds to believe that the regional manager, who had made the agreement of settlement set out in the evidence, was authorized so to act. There was no error in submitting this issue to the decision of the jury.

Appellant's second point is that a verdict should have been directed in its favor because the contract was unenforceable under the Maryland Statute of Frauds, Annotated Code of Maryland, art. 83, § 25, (section 4 of the Uniform Sales Act), since the value of the goods was more than $50, and the contract was not in writing. The District Judge, in his charge to the jury, referred to the provisions of the statute, but ruled that the delivery of the trucks by the supply company to the truck company made it unnecessary for the contract to be in writing. He invited exceptions at the end of the charge, but neither side had any objection to make. Nevertheless, the argument is now made by the appellant that the charge was in error in this respect because the delivery took place before the oral contract was made; and we are told that the objection is not too late because the defendant in the court below prayed for a directed verdict on the ground that no legally sufficient evidence had been offered to entitle the plaintiff to recover. It is said that this is valid practice in Maryland under the ruling in Hamilton v. Thirston, 93 Md. 213, 220, 48 A. 709, a case of contract, in which it was held that defendant's prayer for a directed verdict should have been granted by the trial court because the evidence showed only an oral contract under circumstances where a contract in writing was required by the statute of frauds. The authorities are not uniform as to whether an objection to an oral contract is waived unless it is made when the evidence is offered (see 27 C. J. 373, 374); and it is not going too far to say that the usual practice in Maryland is to object when the oral contract is offered in evidence. In Hamilton v. Thirston, the point was not merely raised by a general demurrer

to the evidence, but also by a specific exception to the granting of each of the plaintiff's prayers which in substance charged the jury that, if they found an oral contract had been made, the plaintiff was entitled to recover. When the point is not plainly made in the trial court, it may not be considered on appeal even under the Maryland practice, as appears from the recent case of J. A. Laporte Corporation v. Pennsylvania-Dixie Cement Corporation, 165 A. 195, 196, decided by the Court of Appeals of Maryland on March 21, 1933. That was an action upon a contract for the sale of goods, and the precise question here involved was discussed by Chief Judge Bond in the following terms:

"The buyer raises on appeal a question whether the contract, lacking as it does a writing of the essential element of the price actually agreed upon, is unenforceable under the statute of frauds. * * * This is a question which does not appear to have been raised below, and for that reason seems foreclosed as possible ground of reversal on appeal. Code, art. 5, § 10. There was testimony that a writing on the actual price was lacking, but in no place does it appear to have been suggested that this affected the enforceability of the contract. The defendant prayed generally that a verdict be rendered in its favor because there was no evidence legally sufficient to entitle the plaintiff to recover, and a ruling on the question could, perhaps, have been made on that prayer, but it has long since been decided that a prayer sufficiently general in terms to afford ground for ruling on a defense raised does not meet the requirement that the defense must plainly appear to have been raised. Tyson v. Shuey, 5 Md. 540, 552. A reading of the record indicates rather clearly that it was not raised in this instance."

Likewise in the federal courts it is the prevailing rule that no question may be raised on appeal under an exception to the denial by the trial court of a motion for directed verdict expressed in general terms, where the court has peremptorily charged the jury on the particular point, and no exception has been taken by appellant to the charge. Louisville & N. R. Co. v. Womack (C. C. A.) 173 F. 752; Choctaw, O. & G. R. Co. v. Jackson (C. C. A.) 192 F. 792, 798, 801; Erlanger Tremont Theatre Corp. v. Ellsmore (C. C. A.) 56 F. (2d) 809, 810.

Affirmed.